IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDS INVESTMENTS, L.P., et al., | CASE NO. CV F 07-0703 LJO GSA |
| Plaintiffs, | **ORDER ON COOPER INDUSTRIES, LLC'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 43.) |
| TEAM ENTERPRISES, INC., et al, | |
| Defendants. / | |
| AND RELATED THIRD-PARTY ACTION. / | |

**INTRODUCTION**

Third-party defendant Cooper Industries, LLC ("Cooper") seeks to dismiss defendant/third-party plaintiff Team Enterprises, LLC's ("Team's")[1] hazardous substances clean up contribution claims on grounds that Cooper is not an "arranger" subject to liability under the Comprehensive Environmental Response and Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., and the California Hazardous Substance Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45. Team responds that it sufficiently alleges that Cooper took intentional steps to dispose of

---

[1] Reference to "Team" includes its predecessor Team Enterprises, Inc.

1

hazardous substances through Cooper's design and manufacture of dry cleaning equipment to impose arranger liability on Cooper. This Court considered Cooper's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the January 21, 2010 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES Team's third-party claims against Cooper.

## BACKGROUND

### The Parties

During 1975-2001, Team leased a Clovis commercial property ("property") from plaintiffs'[2] predecessor to operate a One Hour Martinizing dry cleaners. Plaintiffs pursue claims against Team to recover costs to remediate contamination at the property from perchloroethylene ("PCE"), a volatile organic compound used in dry cleaning.

Cooper is the successor in interest to McGraw Edison Company ("McGraw"), a former manufacturer of dry cleaning equipment, and whose Martin Sales American Laundry Machinery division ("Martin") franchised One Hour Martinizing dry cleaners during 1960-1978.

### Clovis Dry Cleaners Operation

Team and Martin entered into 1975 and 1976 franchise agreements for operation of a One Hour Martinizing franchise at the property. The agreements provided that:

1. "MARTIN must control the quality of all services that take place at STORE OPERATOR'S place of business":
2. "STORE OPERATOR agrees to adhere strictly to the practices and regulations promulgated by MARTIN . . ."; and
3. "MARTIN or its representative may inspect The Store and the work being processed in The Store at any time during regular working hours, without being deemed guilty of trespass or any other tort or criminal act."

At the property, Team used a Martin 30.0 Dry Cleaning Machine ("30.0 machine"), which Team alleges "was manufactured and/or designed by Martin to use PCE and to dispose of PCE into the environment. This equipment was installed pursuant to the specifications of Martin." Team attributes

---

[2] Plaintiffs are Hinds Investments, L.P. and Patricia MacLaughlin and will be referred to collectively as "plaintiffs."

2

the 30.0 machine to have contributed to the property's contamination.

## Team's Claims

Team proceeds on its third-party complaint ("TPC") to allege that Cooper "arranged for the disposal of hazardous substances" to subject Cooper to federal and state contribution, equitable indemnity and declaratory relief claims, which will be addressed in greater detail below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Cooper contends that Team's claims are legally barred in the absence of Cooper's liability as an arranger under CERCLA and HSAA. Team responds that the TPC sufficiently alleges that Cooper took intentional steps to dispose of hazardous substances through Cooper's design and manufacture of the 30.0 machine and Cooper's control of operations by franchise agreements which required adherence to prescribed procedures.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly

be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Citation omitted.)

With these standards in mind, this Court turns to Cooper's challenges to Team's claims.

### Responsible CERCLA Parties

The TPC's (first) CERCLA contribution claim alleges that "Team is entitled to contribution from Cooper" under 42 U.S.C. § 9613(f)[3] in that Cooper is an arranger of hazardous substances disposal under section 9607(a)(3).

CERCLA was enacted in 1980 to provide effective responses to health and environmental threats posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781, 792 (9th Cir. 2007), *reversed on other grounds*, __ U.S. __, 129 S.Ct. 1870 (2009). Under CERCLA, federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties

---

[3] Unless otherwise noted, all further statutory references will be to CERCLA, United States Code, Title 42.

for reimbursement. *Burlington Northern*, 502 F.3d at 792. A key CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict" liability statute. *Burlington Northern*, 502 F.3d at 792. "[L]iability is joint and several when the harm is indivisible." *Burlington Northern*, 502 F.3d at 793.

Section 9607(a) identifies the following as "covered persons" subject to CERCLA contribution claims:

(1) the **owner and operator** of . . . a facility,

(2) any person who at the time of disposal of any hazardous substance **owned or operated any facility** at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise **arranged for disposal or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances ["arrangers"], and

(4) any person who **accepts or accepted** any hazardous substances **for transport** to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ["transporters"] . . .

(Bold added.)

Section 9613(f)(1) authorizes contribution claims:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

To plead a prima facie contribution case against Cooper, Team must prove that Cooper "is within one of four classes of persons subject to CERCLA's liability provisions." *California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069, 1076 (E.D. Cal. 2005). Although section 9607 creates the right of contribution, the "machinery" of section 9613 "governs and regulates such actions, providing the details and explicit recognition that were missing" from section 9607. *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997), *cert. denied*, 524 U.S. 937,

5

118 S.Ct. 2340 (1998). As such, Cooper argues that if an entity is not a covered person under section 9607, that entity is not subject to section 9613 contribution liability because 9607 creates the section 9613 contribution right.

### **CERCLA Arranger Liability**

*Intentional Disposal*

Team attributes to Cooper affirmative steps to dispose of hazardous substances due to Cooper's design of equipment to dispose of PCE. Cooper argues that Team's attempt to hold Cooper/McGraw liable as an arranger based on manufacture and sale of drying cleaning equipment is "unprecedented and unsupportable."

Team points to *Burlington Northern and Sante Fe Railway Co. v. United States*, __ U.S. __, 129 S.Ct. 1870, 1879 (2009), where the U.S. Supreme Court explained that "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." Team contends that to qualify as an arranger, a party may have intended that "at least a portion of the product be disposed of." *See Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880.

Team primarily seeks to impose arranger liability based on the TPC's allegation that the 30.0 machine "was manufactured and/or designed by Martin to use PCE and to dispose of PCE into the environment. This equipment was installed pursuant to the specifications of Martin." Team argues that "allegations that Cooper designed and manufactured a dry cleaning machine that was designed to generate waste PCE and further included directions specifying the method of disposal are consistent with arranger liability under *Burlington*."

Cooper takes exception with Team's reliance on the U.S. Supreme Court's *Burlington Northern* decision in that Team, as seen below, relies on a limited, out-of-context phrase of the decision. Cooper notes that *Burlington Northern* fails to impose arranger liability on Cooper in that the TPC does not allege that Cooper intended disposal of PCE during the transfer of the 30.0 machine to its customers.

The gist of the TPC's allegation is that Martin designed/manufactured the 30.0 machine to dispose of PCE and that the 30.0 machine was installed pursuant to Martin's specifications. Such allegation is an oversimplified conclusion. Team ignores that in *Burlington Northern*, __ U.S. __, 129

S.Ct. 1870, the U.S. Supreme Court held that a pesticide manufacturer was not an arranger despite its knowledge of pesticide spills during transfers and deliveries, and due to equipment failures. The U.S. Supreme Court explained:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, knowledge alone is insufficient to prove that an entity "planned for" the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell [pesticide manufacturer] must have entered into the sale of [its product] with the intention that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).

*Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880.

Team would have this Court believe that the 30.0 machine's sole purpose was to dispose of PCE. The TPC fails to support such notion. Team attempts to hide behind a claim that it "need not describe in detail every way by which a manufacturer controlled the discharge." The TPC makes no attempt to allege control of discharge in that it merely concludes disposal of PCE and equipment installation pursuant to Martin specifications. The TPC's allegations are too far removed to attempt to impose arranger liability on Cooper.

### *Useful Product Defense*

Cooper contends that equipment manufacturers are not "arrangers under CERCLA" and seeks to invoke the "useful product" defense as to the 30.0 machine. Team contends that the useful product defense does not apply to equipment, such as the 30.0 machine, and is limited to products "whose physical composition included a mixture of hazardous and non-hazardous substances."

The useful product defense "applies when the sale is of a new product, manufactured specifically for the purpose of sale, or of a product that remains useful for its normal purpose in its existing state." *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 581 (N.D. Cal. 1993).

Cooper argues that dry cleaning equipment "is a useful product, that when sold, is not waste" and that the useful product defense shields a manufacturer/seller of dry cleaning equipment who "does nothing more than sell a new product." Cooper claims the absence of arranger liability in that "new, unused dry cleaning equipment is a useful product which contains no PCE and no PCE is used or even potentially disposed of until after the equipment is delivered and put into use by the customer."

Team responds that the useful product defense does not apply to the design and manufacture of equipment which "through its intended use disposes of a hazardous substance."

"The vendor of a useful product which through its normal course produces a hazardous substance, such as a battery, is not an arranger under CERCLA." *Payless Cleaners*, 368 F.Supp.2d at 1077 (citing *Cadillac Fairview/Cal., Inc. v. United States*, 41 F.3d 562, 566 (9th Cir.1994)). A manufacturer of PCE cannot be held liable "as a CERCLA arranger where it has done nothing more than sell a useful chemical." *Payless Cleaners*, 368 F.Supp.2d at 1077; *see Adobe Lumber v. Hellman*, 415 F.Supp.2d 1070, 1081 (E.D. Cal. 2006) ("the manufacturer of dry cleaning equipment who does nothing more than provide the machines and operating instructions is not an 'arranger' of waste disposal under CERCLA"), *vacated on other grounds sub nom. Kotrous v. Goss-Jewett Co.*, 523 F.3d 924, 934 (9th Cir. 2008).

Cooper notes that the useful product defense arises out of CERCLA's definition of "disposal" (Section 9601(29))[4] in that merely identifying a "hazardous substance" is insufficient to establish that its placement in a facility constitutes "disposal of any hazardous substance" under CERCLA. *See 3550 Stevens Creek Assocs. v. Barclays Bank of Calif.*, 915 F.2d 1355, 1360-1361 (9th Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014 (1991). For CERCLA purposes, "disposal" is construed "as referring only to an affirmative act of discarding a substance as waste, and not to the productive use of the substance." *3550 Stevens Creek*, 915 F.2d at 1362. As such, Cooper argues that a new product is not a waste and that the productive use of a substance is not disposal to generate CERCLA liability.

Cooper directs "focus upon the disposal of 'waste.'" In the CERCLA context, "hazardous substances are generally dealt with at the point when they are about to, or have become, wastes." *3550 Stevens Creek*, 915 F.2d at 1362. Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products but rather desired "to hold liable those who would attempt to dispose of hazardous wastes or substances under various deceptive guises in order to escape liability for their

---

[4] CERCLA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

1  disposal." *Dayton Independent School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1065-1066 (5th Cir. 1990).

Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808 (italics in original). "Useful product" cases recognize that "liability cannot extend so far as to include *all* manufacturers of hazardous substances, on the theory that there will have to be disposal of the substance some time down the line, *after* it is used as intended." *Burlington Northern*, 502 F.3d at 808 (italics in original).

To distinguish itself from an arranger, Cooper faults the TPC's absence of allegations that McGraw or Martin "installed the machine and physically directed any waste lines" to a disposal location, possessed PCE, or physically disposed of PCE. Cooper concludes that the 30.0 machine's alleged design to use PCE and generation of PCE waste is insufficient to impose arranger liability on Cooper.

Cooper further argues that Team is unable to plead Cooper's "requisite intent" to apply an exception to the useful product doctrine. "[I]t would be error for us not to recognize the indispensable role that state of mind must play in determining whether a party has 'otherwise arranged for disposal . . . of hazardous substances." *U.S. v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1231 (6th Cir. 1996).

Team offers nothing meaningful to support that alleged equipment design involving disposal of hazardous substances invokes CERCLA liability. The TPC alleges, at most, that the 30.0 machine used a hazardous substance that was later disposed of. Design and manufacture of dry cleaning equipment, such as the 30.0 machine, is incongruous with arrangement to dispose of hazardous substances. The TPC alleges nothing more than Cooper's effective design/manufacture of dry cleaning equipment and installation specifications to invoke the useful product defense for Cooper.

### *Ownership, Possession Or Control Of Hazardous Substances*

The TPC attempts to impose arranger liability on Cooper in that Martin franchised the One Hour Martinizing dry cleaners at the property. The TPC points to franchise agreement provisions of Martin's control of "quality of all services," Team's agreement to adhere to Martin's "practices and regulations," and Martin's ability to inspect the dry cleaners. Cooper argues that such provisions are insufficient to impose arranger liability on Cooper in the TPC lacks facts "that Cooper exercised any control over the

disposal of PCE at the dry cleaner locations."

"No court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue." *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1451 (E.D. Cal. 1995); *see United States v. Shell Oil Co.*, 294 F.3d 1045, 1058 (9th Cir. 2002) ("we can do no better than quote from Judge Levi's careful opinion in *United States v. Iron Mountain Mines, Inc.*"); *General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2nd Cir. 1992) ("it is the *obligation* to exercise control over hazardous waste disposal, and not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity an arranger under CERCLA's liability provision") (emphasis in original)).

Moreover, "control over" the design of dry cleaning machines and provision of instructions on their use is insufficient "by themselves" to hold a manufacturer/seller liable as an arranger. *Payless Cleaners*, 368 F.Supp.2d at 1080.

Cooper faults the TPC's absence of allegations that McGraw or Martin:

1.   Selected locations of the 30.0 machine or floor drains;

2.   Installed the 30.0 machine "to hook up to any floor drain";[5] and

3.   Exercised the option to inspect the franchise.

Cooper argues that the TPC's reference to franchise agreement provisions suggests only that Martin desired to control the quality of its franchisee's clothes cleaning to protect Martin's "good name." Cooper notes that the TPC makes no allegations as to disposal of waste or PCE or inspection of dry cleaning equipment, floor drains or waste disposal. Cooper concludes that the TPC fails to support that Cooper/McGraw owned or possessed waste materials at disposal, had authority to control or a duty dispose of waste, or exercised such control or duty.

Team's reliance on its franchise agreements with Martin is unavailing. The franchise agreements gave Martin control over service quality, required Team to adhere to Martin practices and regulations not specific to waste disposal, and permitted Martin inspections without civil or criminal liability. The TPC fails to tie such franchise agreement provisions to PCE disposal to attempt to impose arranger

---

[5]   Cooper notes that the TPC insinuates that someone other than Martin installed the 30.0 machine.

liability on Cooper.

## HSAA Claim

The TPC's (second) HSAA claim alleges that Cooper is liable to Team for indemnification and contribution as a person liable under HSAA due to its "status as an arranger of disposal and discharge of hazardous substances" at the property. The HSAA claim relies on California Health & Safety Code section 25363(e), which provides in pertinent part: "Any person who has incurred removal or remedial action costs in accordance with this chapter or the federal act may seek contribution or indemnity from any person who is liable pursuant to this chapter . . ." The "federal act" refers to CERCLA. A liable person is defined as "those persons described" in section 9607(a). Cal. Health & Saf. Code, § 25323.5(a)(1).

Cooper argues that in the absence of arranger liability under CERCLA, the HSAA claim, likewise based on arranger liability, fails. Team responds that since the TPC alleges CERCLA arranger liability, the TPC maintains an indemnity claim under California Health and Safety Code section 25363(a).

The parties agree that a HSAA claim relies on viability of a CERCLA claim. In absence of CERCLA arranger liability, the HSAA claim fails.

## Indemnity And Other Contribution Claims

Cooper attacks the TPC's other claims. The TPC's (third) equitable indemnity claim alleges that Cooper is obligated to defend and indemnify Team against and from claim and losses incurred by Team in this action. The TPC's (fourth) California statutory contribution claim alleges that Team is entitled to contribution for remediation pursuant to Water Code section 13350(j). The TPC's (fifth) contribution claim alleges that Team is entitled to contribution from Cooper "pursuant to the principles of equitable allocation of loss."

Cooper argues that these claims fail in that "they are dependent upon a viable CERCLA or HSAA claim" and as such, Team "cannot show that Cooper is jointly liable." Team responds that the claims survive with valid CERCLA and HSAA claims.

California Civil Code section 1432 addresses contribution among joint obligors and provides that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against

1  all, may require a proportionate contribution from all the parties joined with him." Under California
2  Code of Civil Procedure section 875(c), "contribution may be enforced only after one tortfeasor has, by
3  payment, discharged the joint judgment or has paid more than his pro rata share thereof."
4        "California law permits a concurrent tortfeasor to obtain equitable indemnity *only* from another
5  concurrent tortfeasor." *General Motors Corp. v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993) (italics in
6  original). "[T]here can be no indemnity without liability . . . [U]nless the prospective indemnitor and
7  indemnitee are jointly and severally liable to the plaintiff there is no basis of indemnity." *Munoz v.*
8  *Davis*, 141 Cal.App.3d 420, 425, 190 Cal.Rptr. 400, 403 (1983). "[A] right to indemnify exists only if
9  the injured party [Team] has a *legal cause of action* against both the indemnitor [Cooper] and the
10 indemnitee [third-party plaintiffs]." *Doupnik*, 1 F.3d at 866 (italics in original; names added). The
11 indemnity "doctrine presupposes that 'each of two persons is made responsible by law to an injured
12 party.'" *New Hampshire Ins. Co. v. Sauer*, 83 Cal.App.3d 454, 459, 147 Cal.Rptr. 879, 882 (1978)
13 (citations omitted).
14       Again, the parties agree that CERCLA claim viability determines the survival of the indemnity
15 and other contribution claims. In absence of CERCLA arranger liability, the indemnity and other
16 contribution claims fail.

17 **<u>Declaratory Relief</u>**

18       The TPC's (sixth) federal declaratory relief claim alleges that Team is entitled to declaratory
19 relief pursuant to section 9613(g)(2) as to Cooper's "liability to Team for all response costs incurred or
20 to be incurred by Team as a result of contamination" at the property. The TPC's (seventh) California
21 declaratory relief claim seeks a judicial determination of "Team's rights, indemnification and
22 contribution" as to remediation of hazardous substance contamination at the property.
23       Section 9613(g)(2) empowers a court to "enter a declaratory judgment on liability for response
24 costs or damages that will be binding on any subsequent action or actions to recover further response
25 costs or damages." The sixth claim further seeks declaratory relief pursuant to 28 U.S.C. § 2201(a)
26 which provides in pertinent part:
27       In a case of actual controversy within its jurisdiction . . . any court of the United
      States, upon the filing of an appropriate pleading, may declare the rights and other legal
28       relations of any interested party seeking such declaration, whether or not further relief

is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from a opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. Of Hartford v. Haworth*, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464 (1937) (citations omitted); *see McClellan Ecological Seepage Situation v. Cheney*, 763 F.Supp. 431, 442 (E.D. Cal. 1989) (declaratory relief unavailable with respect to "previously dismissed" claims), *vacated on other grounds*, 47 F.3d 325 (9th Cir. 1995)).

Cooper argues that in the absence of legal grounds to subject it to contribution or indemnity, there is no actual, justiciable controversy to warrant declaratory relief. Cooper is correct, and Team recognizes that declaratory relief rests on viability of the CERCLA and HSAA claims. With their dismissal, the declaratory relief claims are likewise subject to dismissal.

## CONCLUSION AND ORDER

In absence of a potential CERCLA claim against Cooper, even with an attempt to amend, this Court DISMISSES with prejudice Team's third-party claims against Cooper. This Court DIRECTS the clerk to enter judgment in favor of third-party defendant Cooper Industries, LLC and against defendant/third-party plaintiff Team Enterprises, LLC's in that there is no just reason to delay to enter such judgment given Team's claims against Cooper and Cooper's alleged liability are clear and distinct from claims against the other third-party defendants. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

Dated:   **January 14, 2010**                    **/s/ Lawrence J. O'Neill**
                                                 UNITED STATES DISTRICT JUDGE