1
2
3
4
5
6
7
8                  **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   HINDS INVESTMENTS, L.P., et al.,            CASE NO. CV F 07-0703 LJO GSA

12                        Plaintiffs,            **ORDER ON R.R. STREET & CO. INC.'S**
                                                 **F.R.Civ.P. 12 MOTION TO DISMISS SECOND**
13          vs.                                  **AMENDED COMPLAINT**
                                                 (Doc. 76.)
14   TEAM ENTERPRISES, INC., et al,

15                        Defendants.
     _____/
16

17   AND RELATED CROSS-ACTIONS AND

18   THIRD-PARTY ACTIONS.

19   _____/

20

21                              **INTRODUCTION**

22          Defendant R.R. Street Co. Inc. ("Street") seeks to dismiss plaintiffs' hazardous substances clean

23   up contribution claims on grounds that plaintiffs' operative Second Amended Complaint ("SAC") lacks

24   allegations to render Street liable under federal and state law, including the Comprehensive

25   Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq.,

26   the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq., and the California

27   Hazardous Substance Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45.

28   Plaintiffs respond that Street manufactured the dry cleaning machine at issue to discharge hazardous

                                              1

substances into the environment to subject Street to CERCLA, RCRA, HSAA and other liability. This Court considered Street's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the March 10, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES plaintiffs's claims against Street.

## BACKGROUND[1]

### The Parties

Plaintiffs are Hinds Investments, L.P. ("Hinds") and Patricia MacLaughlin ("Ms. MacLaughlin"). Hinds owns a Clovis commercial property ("property") which defendant Team Enterprises, Inc.("Team") leased from Ms. MacLaughlin's predecessor[2] to operate a One Hour Martinizing dry cleaner during 1975-2001. Hinds and Ms. MacLaughlin (collectively "plaintiffs") pursue claims against Team, Street and other defendants to recover costs to remediate contamination at the property from perchloroethylene ("PCE"), a volatile organic compound used in dry cleaning and a hazardous substance.

### The Puritan 800 Plus Filter Still

Street sold a Puritan 800 Plus Filter Still ("Puritan filter") which Team used at the property. The Puritan filter removed waste materials from PCE and "created waste" but was not used to clean clothes. The Puritan filter cleaned used PCE after PCE had been used in a dry cleaning machine and attempted to separate physically PCE from water to result "in the discharge of water that contained PCE to the drains and sewers."

The Puritan filter "operated much like a still used to make distilled spirit alcohols." PCE containing water (which had entered the dry cleaning equipment as part of the detergent to clean clothes) was raised to a high temperature using pressurized steam. Since PCE boils at a higher temperature than water, water was "boiled off at a lower temperature, allowing the water and the PCE to be separated."

When PCE dissolves in water, it forms an azeotrope, a mixture of two substances with a constant boiling point that cannot be separated through the Puritan filter's distillation. The PCE/water mixture (azeotrope) has a boiling point below water or PCE and was boiled early during distillation and piped

---

[1]    The factual recitation is derived generally from the SAC, the target of Street's challenges.

[2]    Ms. MacLaughlin is the successor-in-interest to now deceased Thomas F. Hinds, who leased the property to Team. Ms. MacLaughlin is the trustee for the Thomas F. Hinds and Mary Jane Hinds Living Trust.

to the Puritan filter's separator, where water (containing dissolved PCE) and distilled PCE were separated.

The SAC attributes "Puritan"[3] to explain that "at the water separator, the PCE can be piped back to the dry cleaning equipment but the water (containing PCE) 'may be drained into a container or piped directly to a floor drain.'"

According to the SAC:

1.    Street "made a conscious decision to send waste water containing PCE into sewers" in that PCE waste water from the water separator "could have been evaporated or aerated, which are environmentally sound options";

2.    The Puritan filter removed a waste (water) from PCE but created a waste (PCE waste in water) "that was disposed of down the drain and into the sewer";

3.    The Puritan filter "existed for the purpose of waste removal and disposal" and "had nothing to do with the actual cleaning of clothes"; and

4.    "Street thus arranged for and controlled the disposal of PCE waste; and contributed to the contamination of PCE" at the property.

Plaintiffs conclude that a Puritan filter operator was required to dispose of waste and that Street instructed to put the waste in a container or put the waste water down a drain to result in Street's causing contamination because it caused waste to be emptied into the drain.

**Plaintiffs' Claims**

According to the SAC, this "action arises out of the need to clean up and remediate environmental contamination caused by the operations" of Team's "dry cleaning establishments." The SAC alleges against Street claims under CERCLA, RCRA, HSAA and California common law and for declaratory relief and attorney fees claims, which will be addressed below.

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion Standards**

Street faults the SAC for its limited "specific allegation concerning Street" that Team used the

---

[3]    Street notes that "Puritan" presumably refers to the Puritan filter "instruction manual."

3

Puritan filter "which generated PCE waste that the operator disposed into the sewer system." Street criticizes the SAC for alleging "nothing more than that Street supplied . . . a piece of equipment that generated PCE waste through its normal use."

Plaintiffs respond that the SAC adequately alleges that the Puritan filter "did not clean clothes" and was an unnecessary component of dry cleaning in that the Puritan filter "processed used water containing used PCE and discharged that contaminated water." As such, "Street arranged for and contributed to the disposal of waste" at the property.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to Street's challenges to the claims against it.

## Assumption Of Truth

Street argues that the SAC's principal allegations against it are "fatally defective" under pleading principles to prohibit their "assumption of truth." Street discredits the allegation that Street "made a conscious decision to send waste water containing PCE into sewers" in that the SAC consistently identifies Team as the property's "sole operator." Street argues that since the "only concrete fact" to connect Street to the property is Team's use of the Puritan filter, an inference that Street made waste water disposal decisions would be "unwarranted" and "unreasonable."

Street characterizes the allegation that Street "arranged for and controlled the disposal of PCE waste" as "merely conclusory," a formulaic recital of a CERCLA element, and "judicial gloss."

Street characterizes the allegation that Street "contributed to the contamination of PCE" at the property as "fatally defective" a formulaic recital of an element under the Resource Conservation and Recovery Act "RCRA"), 42 U.S.C. §§ 6901, et seq.

Street concludes that stripped to its essence, the SAC merely alleges that Team used Street's Puritan filter which generated PCE-containing water through normal use and the instruction manual of which states that water "may be drained into a container or piped directly to a floor drain."

Street raises valid points. A key weakness of the SAC is the absence of factual content to support plaintiffs' conclusions. Although the SAC contains specifics as to the Puritan filter's operation, the SAC lacks sufficient facts to connect that Street "arranged for and controlled the disposal of PCE waste." As discussed below, plaintiffs' claims against Street fail given the SAC's mere flirtation with legal conclusions and formulaic recitals.

## Responsible CERCLA Parties

Turning to the SAC's individual claims against it, Street argues that the absence of supporting facts dooms the claims.

The SAC's (first) CERCLA contribution claim under 42 U.S.C. § 9607(a)[4] alleges that Street and other defendants "are responsible for arranging of disposal of PCE which were Releases or Threatened Releases of PCE" from the property and "are liable to Plaintiffs for all necessary Response

---

[4]      Unless otherwise noted, all further statutory references will be to CERCLA, United States Code, Title 42.

Costs incurred by Plaintiffs in responding to the released Hazardous Substances."

CERCLA was enacted in 1980 to provide effective responses to health and environmental threats posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781, 792 (9th Cir. 2007), *reversed on other grounds*, __ U.S. __, 129 S.Ct. 1870 (2009). Under CERCLA, federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties for reimbursement. *Burlington Northern*, 502 F.3d at 792. A key CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict" liability statute. *Burlington Northern*, 502 F.3d at 792. "[L]iability is joint and several when the harm is indivisible." *Burlington Northern*, 502 F.3d at 793.

Section 9607(a) identifies the following as "covered persons" subject to CERCLA contribution claims:

> (1) the **owner and operator** of . . . a facility,

> (2) any person who at the time of disposal of any hazardous substance **owned or operated any facility** at which such hazardous substances were disposed of,

> (3) any person who by contract, agreement, or otherwise **arranged for disposal or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances ["arrangers"], and

> (4) any person who **accepts or accepted** any hazardous substances **for transport** to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ["transporters"] . . . (Bold added.)

Section 9613(f)(1) authorizes contribution claims:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

To plead a prima facie contribution case against Street, plaintiffs must prove that Street "is within

one of four classes of persons subject to CERCLA's liability provisions." *California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069, 1076 (E.D. Cal. 2005). Although section 9607 creates the right of contribution, the "machinery" of section 9613 "governs and regulates such actions, providing the details and explicit recognition that were missing" from section 9607. *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997), *cert. denied*, 524 U.S. 937, 118 S.Ct. 2340 (1998). As such, if an entity is not a covered person under section 9607, that entity is not subject to section 9613 contribution liability because 9607 creates the section 9613 contribution right.

### CERCLA Arranger Liability

#### *Intentional Disposal*

The SAC seeks to impose section 9607(a)(3) arranger liability based on its allegation that Street "arranged for and controlled the disposal of PCE waste."

Plaintiffs contend that Street took "intentional steps" to dispose of PCE based on the Puritan filter's design "to discharge water contaminated with PCE into the environment" and Street's direction to operators to so discharge. Plaintiffs point to the U.S. Supreme Court's recent explanation that "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern and Sante Fe Railway Co. v. United States*, __ U.S. __, 129 S.Ct. 1870, 1879 (2009).

In *Burlington Northern*, __ U.S. __, 129 S.Ct. 1870, the U.S. Supreme Court held that pesticide manufacturer Shell Oil Company was not an arranger despite its knowledge of pesticide spills during transfers and deliveries, and due to equipment failures. The U.S. Supreme Court explained:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, knowledge alone is insufficient to prove that an entity "planned for" the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell must have entered into the sale of [its product] with the intention that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).
>
> . . . Shell's mere knowledge that spills and leaks continued to occur is insufficient grounds for concluding that Shell 'arranged for' the disposal of [a hazardous substance] with the meaning of § 9607(a)(3).

8

*Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880.

Plaintiffs argue that the SAC's facts "fit" with the U.S. Supreme Court's definition of arranger in that Street sold the Puritan filter "with the intention that at least a portion" of the PCE "would be disposed of" into the environment during the Puritan filter's operation. Plaintiffs note the Puritan filter's function "to discharge wastewater, containing used PCE, into the environment (either down the drain and into a sewer; or into a bucket to be dumped down the drain and into a sewer)." Plaintiffs rely on the following from *Morton International, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 678 (3rd Cir. 2003):

> Second, proof of a defendant's knowledge that hazardous waste can or will be released in the course of the process it has arranged for, provides a good reason to hold a defendant responsible because such proof demonstrates that the defendant knowingly (if not personally) contributed to the hazardous-waste contamination. Thus, general knowledge that waste disposal is an inherent or inevitable part of the process arranged for by the defendant may suffice to establish liability.

However, plaintiffs quote the above out of context and omit the Third Circuit Court of Appeals' preceding explanation:

> We believe that ownership or possession, knowledge, and control are the most critical factors in this analysis for the following reasons. First, proof of ownership, or at least possession, of the hazardous substance is required by the plain language of the statute. See 42 U.S.C. § 9607(a)(3) ("any person who ... arranged for disposal or treatment ... of hazardous substances owned or possessed by such person ....) . . . This required factor is the starting point in determining "arranger liability" because, of course, with ownership comes responsibility. *See Aceto*, 872 F.2d at 1382 (imposing "arranger liability" upon defendant that owned hazardous substance throughout formulation process because finding otherwise "would allow defendants to simply 'close their eyes' to the method of disposal of their hazardous substances").

*Morton*, 343 F.3d at 678.

Plaintiffs conveniently ignore the ownership/possession factor of arranger liability. The SAC fails to allege that Street owned or possessed PCE or PCE-laced water. The operators of the Puritan filter arguably owned or possessed PCE or PCE-laced water. Based on the SAC, Street at best knew that the Puritan filter would create, using the SAC's words, "a waste (PCE waste in water)." The SAC fails to substantiate that Street knew how a Puritan filter operator would dispose of the "waste" to rise to the

/ / /

/ / /

/ / /

9

level of intentional disposal of a hazardous waste.[5]

Moreover, Street correctly takes issue with plaintiffs' notion that Street "directed" the Puritan filter operator to dispose of PCE into the environment based on the Puritan filter manual's options to drain PCE-laden water into a container or to a floor drain given the manual's "*non*obligatory language." (Italics in original.) Furthermore, plaintiffs' points of intentional PCE disposal are negated by the absence of SAC allegations that Street installed the Puritan filter, connected it to floor drains, directed waste disposal from the Puritan filter, or inspected the Puritan filter and its waste disposal.

### *Useful Product Defense*

Street invokes the useful product defense to challenge arranger liability. "A person may be held liable as an 'arranger' under § 9607(a)(3) only if the material in question constitutes 'waste' rather than a 'useful product.'" *Cal. Dept. of Toxic Substances v. Alco Pacific, Inc.*, 508 F.3d 930, 934 (9th Cir. 2007). The useful product doctrine "applies when the sale is of a new product, manufactured specifically for the purpose of sale, or of a product that remains useful for its normal purpose in its existing state." *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 581 (N.D. Cal. 1993).

Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808. "Useful product" cases recognize that "liability cannot extend so far as to include *all* manufacturers of hazardous substances,

_____

[5] Moreover, this Court is troubled by plaintiffs' incomplete case quotations to attempt to support their points. Plaintiffs failed to include the following bold language from *Vine Street, LLC v. Keeling,* 460 F.Supp.2d 728, 752 (E.D. Tex. 2006), to distort the import of the quotation in plaintiffs' opposition:

> **Unlike the plaintiff in R.R. Street, given Norge's substantial involvement in the design of its franchise and the machines' actual installation,** College Cleaners had no practical choice as to how to dispose of the wastewater. Flushing the wastewater to the sewer was not a recommendation or advice, but rather an integral part of Norge's design for the dry-cleaning system and the dry-cleaning facility. Norge's activities here demonstrate that it had the authority to and did exercise actual control over the specific method and manner of the PERC's disposal. Norge was actually involved in deciding how to dispose of that wastewater and the PERC contained therein. Therefore, Norge (and thus Borg-Warner) arranged for the disposal of the PERC.

This Court admonishes that counsel "[s]hall not intentionally misquote to a tribunal the language of a book, statute, or decision." Cal. Rule of Prof. Resp. 5-200(C). This Court will not tolerate such abrogation of legal ethics.

on the theory that there will have to be disposal of the substance some time down the line, *after* it is used as intended." *Burlington Northern*, 502 F.3d at 808 (italics in original).

"The vendor of a useful product which through its normal course produces a hazardous substance, such as a battery, is not an arranger under CERCLA." *Payless Cleaners*, 368 F.Supp.2d at 1077 (citing *Cadillac Fairview/Cal., Inc. v. United States*, 41 F.3d 562, 566 (9th Cir.1994)). A fellow judge of this Court concluded that a supplier of dry cleaning machines that produce PCE waste is not an arranger despite allegations that the supplier "had control over the design of its dry cleaning machines and provided instructions on their use." *Payless Cleaners*, 368 F.Supp.2d at 1080; *see also Adobe Lumber v. Hellman*, 415 F.Supp.2d 1070, 1081 (E.D. Cal. 2006) ("the manufacturer of dry cleaning equipment who does nothing more than provide the machines and operating instructions is not an 'arranger' of waste disposal under CERCLA"), *vacated on other grounds sub nom. Kotrous v. Goss-Jewett Co.*, 523 F.3d 924, 934 (9th Cir. 2008).

Street notes that the SAC alleges that Street "manufactured" the Puritan filter rendering it a "principal product" sold by Street, not a waste "by-product" of the manufacturing process of another product. Street characterizes the SAC to allege that Street did not sell the Puritan filter as a used product to dispose of in that Street was primarily engaged in the sale of the Puritan filter to render it useful. Street continues that it is not a CERCLA arranger as the vendor of a useful product which through its normal course produced a hazardous substance, that is, PCE-containing water and as a manufacturer who merely provided the Puritan filter and operating instructions.

Plaintiffs caution this Court "to look beyond the actual sale to determine if the disposal of a hazardous substance was arranged through the transaction." Plaintiffs argue that a product vendor "may be liable as an arranger when the disposal of waste is a substantial part of the transaction." Plaintiffs contend that "Street's direction to dispose of the separator water either directly into the sewer or into a bucket before placing the separator water into the sewer, and the lack of a practical alternative to dispose of the separator water combine to create an arrangement for the disposal of PCE into the environment."

Plaintiffs offer nothing substantial to negate the useful product defense. The SAC alleges that Street manufactured the Puritan filter and provided operating instructions. The SAC does not allege that the Puritan filter itself is a hazardous substance and in turn, that its sale is an arrangement to dispose of

11

hazardous substances. The transaction at issue here is the sale of the Puritan filter, an event which neither produces nor involves hazardous substances. The SAC fails to allege facts that Puritan filter manufacture or sale constitutes "arrangement for the ultimate disposal of a hazardous substance." *Payless*, 368 F.Supp.2d at 1077. Even looking "beyond the actual sale," the SAC offers nothing to suggest that 'disposal of a hazardous substance was arranged through the transaction." *Payless*, 368 F.Supp.2d at 1077. The analysis of a fellow judge of this Court rings true here: "Peters [parties seeking to impose CERCLA arranger liability] do not allege any facts to support a finding that a substantial part of Maytag's sale of the dry cleaning machines involved the arrangement for the disposal of waste water. Rather, Maytag's transaction can be described only as the sale of a useful good which, through its normal use, created a waste byproduct. Under these facts alone, Maytag may not be held liable as a CERCLA arranger." *Payless*, 368 F.Supp.2d at 1078. Plaintiffs' notion that "*Payless Cleaners* is no longer good law" is invalid and unsupported. Plaintiff's place dubious reliance on *Berg v. Popham*, 113 P.3d 604, 612 (2005), which addresses an impertinent Alaskan statute and was decided prior to the U.S. Supreme Court's *Burlington Northern* decision. In short, the SAC's (first) CERCLA arranger claim fails as to Street.

### CERCLA Declaratory Relief

The SAC's (second) declaratory relief claim seeks declaratory judgment pursuant to section 9613(g)(2) "of the liability of defendants to plaintiffs for all Response Costs incurred or to be incurred by plaintiffs in implementing the remedial action plan approved by this Court for responding to the Releases of Hazardous Substances."

Section 9613(g)(2) empowers a court to "enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

Street argues that in the absence of its section 9607 liability, "plaintiffs are categorically not entitled to the requested declaratory relief." *See Union Station Associates, LLC. v. Puget Sound Energy, Inc.*, 238 F.Supp.2d 1226, 1230 (W.D. Wash. 2002) ("Given that the Court granted partial summary judgment disposing of Union's § 107 claim for cost recovery, and with this order dismisses Union's § 113(f) claim, no substantive federal claims exist upon which to base Union's declaratory judgment

claims. The declaratory judgment causes of action are therefore dismissed.")

Street is correct, and plaintiffs appear to concede that potential section 9613 relief is tethered to a viable section 9607 claim. In the absence of viable CERCLA liability, Street is not subject to CERCLA declaratory relief to warrant dismissal of the SAC's (second) declaratory relief claim against Street.

## RCRA Claim

The SAC's (third) RCRA claim under 42 U.S.C. § 6972(a)(1) alleges that Street and the other defendants "have contributed to the past and present handling, storage, treatment, transportation or disposal of hazardous waste ('PCE'), which may present an imminent and substantial endangerment to health or the environment."

### *Generator*

Plaintiffs invoke 42 U.S.C. § 6972(a)(1)(B) ("section 6972(a)(1)(B)"), which permits a civil action against "any person . . . including any past or present **generator** who has **contributed** or who is **contributing** to the past or present handling, storage, **treatment**, transportation, or **disposal** of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." (Bold added.) Plaintiffs characterize Street as a generator, which is defined as "any person, by site, whose act or process produces hazardous waste . . ." 40 C.F.R. § 260.10. Plaintiffs contend that Street constitutes a generator in that the Puritan filter's purpose "was to discharge contaminated separator water (containing used PCE) into the environment."

To support their generator contention, plaintiffs point to the following explanation from a fellow district court:

> Congress expressed its intent that RCRA apply to: (1) those who create solid waste, (2) those who transport or handle it during its life, and (3) those who provide a final resting place for such waste.
>
> Additionally, among those specifically included in the definition of "any persons" are "generators." *See* 42 U.S.C. § 6972(a)(1)(B) (1983 & Supp.1991). As a result, the Court is further persuaded that RCRA applies to individuals who do no more than create solid waste. The Court simply will not accept defendants' interpretation of the statute which would allow individuals to create solid waste, and avoid the requirements of RCRA by never making any attempt to clean up the mess. Clearly such a result is not what was intended by a statute that desires to reduce "the amounts of solid waste that are generated."

*Zands v. Nelson*, 779 F.Supp. 1254, 1263-1264 (S.D. Cal. 1991); *see U.S. v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 741 (8th Cir. 1986) (RCRA's intention is "to impose liability upon past non-negligent off-site generators and transporters of hazardous waste").

Street notes the absence of benefit to classify it "as a 'generator' of waste – as opposed to a 'transporter' of waste or to an 'owner or operator' of a waste-related facility – because the statute makes *all* of these categories of persons . . . potentially liable." Street focuses plaintiffs' need to show that Street "contributed . . . to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F.Supp.2d 930, 978 (E.D. Cal. 2003) (quoting 42 U.S.C. § 6972(a)(1)(B)).

Plaintiffs pinpoint no SAC allegations to qualify Street as an RCRA "generator." Plaintiffs appear to claim Street is an RCRA generator because it failed to "clean up the mess." Street applies a non-analogous quote from *Zach* to claim Street is an RCRA generator. Such application is unavailing given that the SAC fails to allege that Street "created" solid waste in that PCE creation is dependent on Puritan filter use and operation by someone other than Street. The SAC fails to establish that Street is subject to RCRA liability as a generator.

### Contribution To Treatment And Disposal Of Hazardous Waste

Plaintiffs argue that Street contributed to treatment and disposal of hazardous waste at the property by manufacturing the Puritan filter "to dispose of waste water into the environment and directing operators to discharge that water."

The "phrase 'contributed to' the contamination on-site suggests 'some level of causation between the contamination and a party to be held liable.'" *Interstate Non-Ferrous Corp.*, 298 F.Supp.2d at 979 (E.D. Cal. 2003) (quoting *Hudson Riverkeeper Fund, Inc. v. Atlantic Richfield Co.*, 138 F.Supp.2d 482, 487 (S.D.N.Y. 2001)). In *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008), *cert. denied*, __ U.S. __, 129 S.Ct. 2002 (2009), the Seventh Circuit Court of Appeals summarized necessary causation for a RCRA claim:

> A plain reading of the "has contributed or is contributing" language of § 6972(a)(1)(B) compels us to find that RCRA requires active involvement in handling or storing of materials for liability. The ordinary meaning of "contribute" is "to act as a determining

14

factor." *Webster's II New College Dictionary* (2005). By definition, the phrase "has contributed or is contributing" requires affirmative action. The vast majority of courts that have considered this issue read RCRA to require affirmative action rather than merely passive conduct . . .

The Eighth Circuit Court of Appeals has weighed in on interpretation of section 6972(a)(1)(B)'s "contributing to":

> Although the phrase "contributing to" is not defined by the statute, its plain meaning is "to have a share in any act or effect." Webster's Third New International Dictionary 496 (1961). "To have a share in" is arguably less involvement than might be required by the plain meaning of the phrase "to arrange": "to make plans, prepare," . . .

*U.S. v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1384 (8th Cir. 1989).

A fellow district court has explained that a "straightforward reading of RCRA compels a finding that only active human involvement with the waste is subject to liability" under section 6972(a)(1)(B). *Interfaith Community Organization v. Honeywell International, Inc.*, 263 F.Supp.2d 796, 844 (D. N.J. 2003). " Congress intended to impose liability only where a person is shown to have affirmatively acted as a determining factor over the waste management activities . . ." *Interfaith Community*, 263 F.Supp.2d at 844.

Street argues that the SAC fails to satisfy RCRA-required "active" involvement or "affirmative" action in that Street's alleged "passive conduct" in waste disposal was "confined to selling a single piece of equipment that allegedly generated PCE-containing water that *Team* independently chose to discharge into the sewer." (Italics in original.) Street notes that the Ninth Circuit would not hold manufacturers liable as RCRA manufacturers given that under its "expansive view of arranger liability" under CERCLA, the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808 (italics in original). A fellow district court agrees with this point:

> Although the statutory requirements are somewhat different under each statute, the reasons justifying the court's holding that Monsanto did not arrange for disposal within the meaning of CERCLA also foreclose liability for disposal pursuant to RCRA. The sale of a useful product does not constitute the "handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste" required by RCRA. . . .The PCBs sold by Monsanto to its customers were transferred as a valuable commodity and the link between their sale by Monsanto and the ultimate discharge of contaminants, including PCBs, onto the Site is too attenuated to justify imposing liability upon the manufacturer.

15

*United States v. Union Corp.*, 277 F.Supp.2d 478, 491 (E.D. Pa. 2003).

Plaintiffs argue that section 6972(a)(1)(B)'s "contributing to" phrase requires a "nexus between the defendant and the waste at issue" and must be interpreted liberally. Plaintiffs point to the Senate Report: "Some terms and concepts, such as persons 'contributing to' disposal resulting in a substantial endangerment, are meant to be more liberal than their common law counterparts. For example, a company that generated hazardous waste might be someone 'contributing to' an endangerment . . . even where someone else deposited the waste in an improper disposal site . . . where the generator had knowledge of the illicit disposal or failed to exercise due care in selecting or instructing the entity actually conducting the disposal." S.Rep.No.172, 96th Cong., 2d Sess. 5, reprinted in (1980) U.S.Code Cong. & Ad.News 8665, 8669. Plaintiffs claim "a strong nexus between Street and the contamination" in that the Puritan filter discharged "water saturated with PCE into a floor drain" to result in contamination. Plaintiffs further argue that although Street did not operate Puritan filter, Street contributed to the property's contamination as "a natural consequence of the use of the manufactured device."

In its reply papers, Street responds that although it sold the Puritan filter, Street lacked ownership or control of the Puritan filter during its operation. Street argues that with plaintiffs' failure to establish CERCLA arranger liability, "there is no reason or authority to conclude that Plaintiffs have stated a claim that Street *contributed* to disposal under RCRA." (Italics in original.)

This Court agrees with plaintiffs as to a nexus between defendant and the waste or a "level of causation between the contamination and a party to be held liable." *Interstate Non-Ferrous Corp.*, 298 F.Supp.2d at 979. However, the problem for plaintiffs is the SAC's absence of allegations of "active involvement in handling or storing of materials." *Sycamore Indus. Park*, 546 F.3d at 854. The SAC does not allege that Street handled or stored PCE or engaged in similar affirmative action. For RCRA purposes, the SAC reveals Street's passive conduct limited to manufacture of the Puritan filer which was operated by others. Street did not generate or dispose of a hazardous substance or engage in waste management activities. Moreover, manufacture of the Puritan filter is not analogous to the leaking underground storage tank at issue in *Agricultural Excess & Surplus Ins. Co. v. A.B.D. Tank & Pump Co.*,

16

878 F.Supp. 1091 (N.D. Ill. 1995), in that a storage tank constitutes active and affirmative involvement in storage or disposal of hazardous waste. Plaintiffs' reliance on the unpublished *City of Stamps, Ark. v. Alcoa, Inc.*, 2006 U.S. Dist. LEXIS 27201 (W.D. Ark. 2006), is unavailing given that the case addressed transporters and issues irrelevant to those at hand. Plaintiffs fail to establish that the SAC alleges a viable RCRA claim against Street.

## Nuisance

The SAC's fourth claim alleges that Street and the other defendants "have caused a nuisance to exist, by virtue of the contamination," including "the continuing discharge of PCE into groundwater."

Street attributes the claim to allege a private, not public, nuisance. "A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession. " *Wilson v. Interlake Steel Co.,* 32 Cal.3d 229, 233, 185 Cal.Rptr. 280 (1982) (citation omitted). Street notes that since the claim addresses a continuing PCE discharge into "groundwater," it fails to allege damage "specially injurious," Cal. Civ. Code § 3493 (private suit), that is, "different in kind and not merely in degree from that suffered by other members of the public," *Koll-Irvine Center Property Owners Assoc. v. County of Orange*, 24 Cal.App. 4th 1036, 1040, 29 Cal.Rptr.2d 664 (1994).

Street faults the nuisance claim in that the SAC essentially alleges, in Street's words, that "Street placed into the stream of commerce equipment that generated PCE-containing wastewater, and that Street informed users like Team of various possible methods of disposal, only one of which Plaintiffs say was improper." Street points to *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal.App.4th 28, 13 Cal.Rptr.3d 865 (2004), where the California Court of Appeal addressed a California hazardous substances remediation and recovery statute. The California Court Appeal noted that in construing the statute "in light of the common law principles" on nuisance, "we conclude that those who took affirmative steps directed toward the improper discharge of solvent wastes – for instance, by manufacturing a system designed to dispose of wastes improperly or by instructing users of its products to dispose of wastes improperly – may be liable under that statute, but those who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal are not liable." *City of Modesto*, 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865. The California Court of Appeal further observed that conduct "limited to manufacturing or selling solvents to dry cleaners, with

17

knowledge of the hazards of those substances, without alerting the dry cleaners to proper methods of disposal" does not fall "within the context of nuisance." *City of Modesto*, 119 Cal.App.4th at 42, 13 Cal.Rptr.3d 865. Street concludes that the SAC lacks allegations rising to the level of affirmatively instructing users to dispose of wastes improperly.

Plaintiffs offer nothing meaningful to challenge Street's arguments that the SAC fails to allege Street's nuisance. Plaintiffs rely on a tired refrain that Street designed the Puritan filter "to dispose of PCE contaminated water either directly into the sewer system or into a contained [sic] before being placed into the sewer system." Plaintiffs again play the game of omitting a key portion of a quoted case passage to distort it. Plaintiffs omitted the following bold language from *City of Modesto* and suggested that it did not exist with their inaccurate quotation: **"In harmony with *Selma*, we think a reasonable fact finder might conclude that** defendants who manufactured equipment designed to discharge waste in a manner that will create a nuisance, or who specifically instructed a user to dispose of wastes in such a manner, could be found to have caused or permitted a discharge." Street correctly highlights the need of "affirmative acts or instructions" to support a finding of assistance "in creating a nuisance." *City of Modesto*, 119 Cal.App.4th at 41, 13 Cal.Rptr.3d 865. Plaintiffs fail to substantiate the nuisance claim to warrants its dismissal.

### Trespass

The SAC's fifth claim alleges that Street and the other defendants "have committed a continuing trespass."

Street argues that it is not liable for common law trespass in the absence of liability for common law nuisance.

"California's definition of trespass is considerably narrower than its definition of nuisance." *Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 674,15 Cal.Rptr.2d 796 (1993). "A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it." *Wilson v. Interlake Steel Co.,* 32 Cal.3d at 233, 185 Cal.Rptr. 280 (citation omitted). "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." *Cassinos v. Union Oil Co.,* 14 Cal.App.4th 1770, 1778, 18 Cal.Rptr.2d 574 (1993) (citation omitted) (trespass where wastewater was injected from defendant's property to plaintiff's, interfering with plaintiff's mineral estate). A trespass "may include

wrongful entry or invasion by pollutants." *Martin Marietta Corp. v. Insurance Co. of North America*, 40 Cal.App.4th 1113, 1132, 47 Cal.Rptr.2d 670 (1995).

Citing to California Judicial Council Civil Jury Instruction 2000 – Trespass, Street holds plaintiffs to establish that Street "intentionally, recklessly, or negligently caused" PCE to enter the property and that such entry "was a substantial factor" to cause plaintiffs' harm. Street argues that it is not liable for trespass in the absence of SAC allegations that it took "requisite" "affirmative steps" to cause PCE to enter the property and to cause a PCE waste discharge.

Plaintiffs respond that Street took necessary affirmative steps by "manufacturing a system designed to dispose of wastes improperly" or "instructing users of its products to dispose of wastes improperly."

The problem for plaintiffs is that they rest on platitudes. Plaintiffs fail to illustrate "improper" disposal of wastes and rely merely on purported disposal of PCE-laced water by persons other than Street into the sewer. Street's alleged conduct fails to substantiate invasion in exclusive possession of land to support a trespass claim.

**Comparative Equitable Indemnification**

The SAC's eighth claim alleges that plaintiffs are entitled to "comparative equitable indemnity" from Street and the other defendants "for such damages and costs plaintiffs have paid or will pay in excess of his share."

Street argues that the comparative equitable indemnification claim fails is the absence of "Street's liability on any substantive ground." Plaintiffs agree that plaintiffs' "remaining claims" are "derivative of Street's liability" under CERCLA and RCRA and for trespass and nuisance. In the absence of the predicate liability, the comparative equitable indemnity claim fails.

**Hazardous Substance Account Act Response Costs And Declaratory Relief**

The SAC's ninth claims seeks to recover response costs under the Hazardous Substance Account Act ("HSAA"), California Heath & Safety Code, §§ 25300, et seq. The claim alleges that Street and the other defendants are "'covered persons' within the meaning of CERCLA, and therefore 'responsible parties' under HSAA and liable to plaintiff for Response Costs and other damages."

The SAC's tenth claim seeks pursuant to HSAA (Cal. Health & Saf. Code, § 25363), declaratory

relief that defendants are liable for HSAA response costs.

Street argues that it is not subject to HSAA liability or declaratory relief in the absence of "derivative" CERCLA liability in that a "'[r]esponsible party' or 'liable,' person for the purposes of [HSAA], means those persons described" in CERCLA section 9607(a). Cal. Heath & Saf. Code, § 25323.5(a). Plaintiffs concede that their HSAA claims' viability rests with their CERCLA and RCRA claims.

Again, the absence of valid CERCLA and RCRA claims dooms plaintiffs' HSAA claims.

### Declaratory Relief

The SAC's eleventh claim seeks "a judicial determination pursuant to California Code of Civil Procedure § 1060 of plaintiffs' right to reimbursement and indemnification by defendants for all costs and attorneys' fees heretofore or hereafter incurred by plaintiffs as a result of defendants' conduct."

Street seeks dismissal of the claim in absence of other viable claims against it.

The SAC's reference to a California civil procedure statute is curious given this is a federal action and subject to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, providing in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

Once again, the declaratory relief claim falls with the CERCLA, RCRA and other claims in the absence of a justiciable controversy.

## Attorney Fees

The SAC's twelfth claim seeks recovery of attorney fees under California Code of Civil Procedure section 1021.5 and alleges that plaintiffs' recovery of response costs under CERCLA "confers a benefit on the public by ensuring that those who benefitted from and who are at fault for the Release of Hazardous Substances and Hazardous Wastes into the Environment bear the full costs of such Release."

California Code of Civil Procedure section 1021.5 authorizes an "award of attorneys' fees to a successful party" in an action "which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Street argues that in the absence of a claim against Street, plaintiffs are not successful parties entitled to seek attorney fees under the statute.  Street is correct.  The attorney fees claim fails.

## Attempt To Amend

Plaintiffs do not request an attempt to amend as an alternative to Street's dismissal, presumably because the primary issues are legal and the SAC's alleged facts are straightforward and inclusive. Allegation of additional facts offers nothing for evaluation of plaintiffs' claims.  As such, an attempt to amend the SAC is not in order.

# CONCLUSION AND ORDER

For the reasons discussed below, this Court:

1.    DISMISSES this action with prejudice against Street; and

2.    DIRECTS the clerk to enter judgment in favor of defendant R.R. Street & Co. Inc. and against plaintiffs Hinds Investments, L.P. and Patricia MacLaughlin in that there is no just reason to delay to enter such judgment given plaintiffs' claims against Street and Street's alleged liability are clear and distinct from claims against the other parties. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

Dated:    **March 4, 2010**            **/s/ Lawrence J. O'Neill**
                                       UNITED STATES DISTRICT JUDGE