1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  HINDS INVESTMENTS, L.P.,                    CASE NO. CV F 07-0703 LJO GSA
    et al.,
12                                              **ORDER ON DEFENDANT HOYT**
                         Plaintiff,             **CORPORATION'S F.R.Civ.P. 12 MOTION TO**
13                                              **DISMISS**
          vs.                                   (Doc. 115.)
14
    TEAM ENTERPRISES, INC., et al.,
15
                         Defendants.
16  _____/

17
    AND RELATED CROSS-ACTIONS AND
18
    THIRD-PARTY ACTIONS.
19
    _____/
20

21                              **INTRODUCTION**

22          Defendant Hoyt Corporation ("Hoyt") seeks to dismiss plaintiffs' hazardous substances clean

23  up contribution claims on grounds that plaintiffs' operative Second Amended Complaint ("SAC") lacks

24  allegations to render Hoyt liable under federal and state law, including the Comprehensive

25  Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq.,

26  the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq., and the California

27  Hazardous Substance Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45.

28  Plaintiffs respond that Hoyt intentionally designed and manufactured dry cleaning waste equipment to

                                               1

1   generate disposable waste to subject Hoyt to contribution liability.  This Court considered Hoyt's

2   F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 27, 2010 hearing, pursuant

3   to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES plaintiffs' claims against

4   Hoyt.

5                                          **BACKGROUND**[1]

6                                           **The Parties**

7          Plaintiffs are Hinds Investments, L.P. ("Hinds") and Patricia MacLaughlin ("Ms. MacLaughlin").

8   Hinds owns a Clovis commercial property ("property") which defendant Team Enterprises, Inc.("Team")

9   and others leased from Ms. MacLaughlin's predecessor[2] to operate a dry cleaning business during 1975-

10  2001.  Hinds and Ms. MacLaughlin (collectively "plaintiffs") pursue claims against Team, Hoyt and

11  other defendants to recover costs to remediate contamination at the property from perchloroethylene

12  ("PCE"), a volatile organic compound used in dry cleaning and a hazardous substance.

13                                  **The Hoyt Sniffer/Sniff-O-Miser**

14         Team used at the property a Hoyt Sniffer/Sniff-O-Miser ("Hoyt Sniffer"), which Hoyt

15  manufactured.  The Hoyt Sniffer's function "was to suck in vapors of PCE in the dry cleaning

16  establishment's air and machinery and collect them in a filter (adsorber) so that the PCE could be

17  reduced to a liquid and reused to clean clothes."  Hoyt notes that the Hoyt Sniffer was "designed to

18  recover PCE for reuse by dry cleaners" by recovering "PCE vapors that otherwise would have been lost

19  into the atmosphere during the dry cleaning process" and "was not designed to use PCE."

20         The SAC alleges that:

21     1.    "Hoyt recommended that the adsorber be steam cleaned ('stripped') as often as daily to

22           remove PCE from the adsorber";

23     2.    According to Hoyt:

24           a.    "'[S]tripping' would recover up to five gallons of PCE from the adsorber";

25           b.    "PCE would be separated from the water and reused at the dry cleaner"; and

---

[1]    The factual recitation is derived generally from the SAC, the target of Hoyt's challenges.

[2]    Ms. MacLaughlin is the successor-in-interest to now deceased Thomas F. Hinds, who leased the properties to Team.  Ms. MacLaughlin is the trustee for the Thomas F. Hinds and Mary Jane Hinds Living Trust.

2

     c.     "[E]ach 'stripping' operation produced twelve gallons of water (from the steam used in the process)";

3.     "Hoyt states that the water at the water separator that is the result of the 'stripping' process 'contains traces of dissolved perchloroethylene and may need further treatment before discharge. If no treatment is necessary the water coming from the separator is considered waste water and should be piped to an open sewer system . . .'";[3]

4.     The Hoyt Sniffer's purpose "was to save money for the dry cleaner operation by reusing waste/emitted PCE, and disposal of PCE. The equipment had nothing to do with the actual cleaning of clothes";

5.     "The waste water that contained PCE from the separator could have been evaporated or aerated, which are environmentally sound options. Hoyt made a conscious decision to send waste water containing PCE into sewers";

6.     Hoyt "advised its customers to dispose of separator water in sewers"; and

7.     Hoyt "arranged for and controlled the disposal of PCE waste; and contributed to the contamination of PCE" at the property.

**Plaintiffs' Claims**

According to the SAC, this "action arises out of the need to clean up and remediate environmental contamination caused by the operations" of Team's "dry cleaning establishments." The SAC alleges against Hoyt claims under CERCLA, RCRA, HSAA and California common law and for declaratory relief and attorney fees, which will be addressed below. Hoyt attributes the SAC to allege that "Hoyt is responsible for the contamination at the site because Team failed to dispose of wastewater from the Sniff-O-Miser in a manner that was compliant with RCRA and other waste disposal laws."

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion Standards**

Hoyt faults the SAC's "conclusory" allegations which lack "facts relative to Hoyt to support any of Plaintiffs' claims." Hoyt argues that the allegations against it "simply do not rise to the level required

---

[3]     Such statement apparently appeared in the Hoyt Sniffer manual.

1    to state a claim under any of [the] theories alleged by Plaintiffs."  Plaintiffs respond that "Hoyt created

2    a device which was inherently designed to generate waste" to subject Hoyt to contribution liability.

3            A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

4    forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

5    of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

6    whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

7    support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

8    *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

9    there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

10   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

11   *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

12           In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

13   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

14   whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

15   *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

16   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

17   *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

18   need not permit an attempt to amend if "it is clear that the complaint could not be saved by an

19   amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

20           "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

21   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

22   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

23   *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

24   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

25   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

26   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

27   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

28   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

4

1   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

2        In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

3   explained:

4             To survive a motion to dismiss, a complaint must contain sufficient factual
          matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A

5        claim has facial plausibility when the plaintiff pleads factual content that allows the court
          to draw the reasonable inference that the defendant is liable for the misconduct alleged.

6        . . . The plausibility standard is not akin to a "probability requirement," but it asks for
          more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

7

8        After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

9   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

10  content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret*

11  *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

12       The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

13            First, the tenet that a court must accept as true all of the allegations contained in
          a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of

14       a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
          only a complaint that states a plausible claim for relief survives a motion to dismiss. . .

15       . Determining whether a complaint states a plausible claim for relief will . . . be a
          context-specific task that requires the reviewing court to draw on its judicial experience

16       and common sense. . . . But where the well-pleaded facts do not permit the court to infer
          more than the mere possibility of misconduct, the complaint has alleged – but it has not

17       "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

18            In keeping with these principles a court considering a motion to dismiss can
          choose to begin by identifying pleadings that, because they are no more than conclusions,

19       are not entitled to the assumption of truth. While legal conclusions can provide the
          framework of a complaint, they must be supported by factual allegations. When there are

20       well-pleaded factual allegations, a court should assume their veracity and then determine
          whether they plausibly give rise to an entitlement to relief.

21

22  *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

23       With these standards in mind, this Court turns to Hoyt's challenges to the claims against it.

24                          **Responsible CERCLA Parties**

25       The SAC's (first) CERCLA contribution claim under 42 U.S.C. § 9607(a)[4] alleges that Hoyt and

26  other defendants "are responsible for arranging of disposal of PCE which were Releases or Threatened

27  _____

28       [4]        Unless otherwise noted, all further statutory references will be to CERCLA, United States Code, Title 42.

1  Releases of PCE" from the property and "are liable to Plaintiffs for all necessary Response Costs

2  incurred by Plaintiffs in responding to the released Hazardous Substances."

3        CERCLA was enacted in 1980 to provide effective responses to health and environmental threats

4  posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781,

5  792 (9th Cir. 2007), *reversed on other grounds*, __ U.S. __, 129 S.Ct. 1870 (2009).  Under CERCLA,

6  federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties

7  for reimbursement. *Burlington Northern*, 502 F.3d at 792.  A key CERCLA purpose is to shift "the cost

8  of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal

9  of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*,

10  3 F.3d 889, 897 (5th Cir. 1993).  CERCLA is a "super-strict" liability statute. *Burlington Northern*, 502

11  F.3d at 792.  "[L]iability is joint and several when the harm is indivisible." *Burlington Northern*, 502

12  F.3d at 793.

13        Section 9607(a) identifies the following as "covered persons" subject to CERCLA contribution

14  claims:

15        (1) the **owner and operator** of . . . a facility,

16        (2) any person who at the time of disposal of any hazardous substance **owned or
    operated any facility** at which such hazardous substances were disposed of,

17

18        (3) any person who by contract, agreement, or otherwise **arranged for disposal
    or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**,

19    of hazardous substances owned or possessed by such person, by any other party or entity,
    at any facility . . . owned or operated by another party or entity and containing such

20    hazardous substances ["arrangers"], and

21        (4) any person who **accepts or accepted** any hazardous substances **for transport**
    to disposal or treatment facilities . . . or sites selected by such person, from which there

22    is a release, or a threatened release which causes the incurrence of response costs, of a
    hazardous substance ["transporters"] . . . (Bold added.)

23

24  Section 9613(f)(1) authorizes contribution claims:

25        Any person may seek contribution from any other person who is liable or
    potentially liable under section 9607(a) of this title, during or following any civil action

26    under section 9606 of this title or under section 9607(a) of this title. Such claims shall
    be brought in accordance with this section and the Federal Rules of Civil Procedure, and

27    shall be governed by Federal law. In resolving contribution claims, the court may allocate
    response costs among liable parties using such equitable factors as the court determines

28    are appropriate.

1    To plead a prima facie contribution case against Hoyt, plaintiffs must prove that Hoyt is "within

2  one of four classes of persons subject to CERCLA's liability provisions."  *California Dept. of Toxic*

3  *Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069, 1076 (E.D. Cal. 2005).  Although section

4  9607 creates the right of contribution, the "machinery" of section 9613 "governs and regulates such

5  actions, providing the details and explicit recognition that were missing" from section 9607.  *Pinal*

6  *Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997), *cert. denied*, 524 U.S. 937,

7  118 S.Ct. 2340 (1998).  As such, if an entity is not a covered person under section 9607, that entity is

8  not subject to section 9613 contribution liability because 9607 creates the section 9613 contribution

9  right.

10                                  **CERCLA Arranger Liability**

11    Hoyt contends that plaintiffs must clear "three independent hurdles" to impose CERCLA

12  arranger liability on a product manufacturer:

13         1.    The product manufacturer "intended to dispose of a hazardous substance through the sale

14               of its product";

15         2.    The "useful product exception does not apply"; and

16         3.    The product manufacturer "exercised ownership, possession or control" of hazardous

17               substances.

18  Hoyt explains that it is not a CERCLA arranger in that it is a "manufacturer of a useful product . . .

19  which never owned, possessed or controlled hazardous waste and had no direct, on-site activities."

20                                  ***Intentional Disposal***

21    Hoyt argues that the "mere allegation that Hoyt's manuals contained waste disposal guidance is

22  not sufficient to sustain Plaintiff's [sic] obligation to allege facts showing that Hoyt intended to dispose

23  of a hazardous substance."

24    Plaintiffs respond that they need not allege that "an 'arranger' intended to dispose of hazardous

25  waste."  Plaintiffs argue that CERCLA liability "does not depend upon the arranger providing specific

26  instructions on how or where to dispose of hazardous waste."

27    The U.S. Supreme Court's recently explained that  "under the plain language of the statute, an

28  entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a

                                            7

hazardous substance." *Burlington Northern and Sante Fe Railway Co. v. United States*, __ U.S. __, 129 S.Ct. 1870, 1879 (2009). In *Burlington Northern*, __ U.S. __, 129 S.Ct. 1870, the U.S. Supreme Court held that pesticide manufacturer Shell Oil Company was not an arranger despite its knowledge of pesticide spills during transfers and deliveries, and due to equipment failures. The U.S. Supreme Court explained:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, **knowledge alone is insufficient to prove that an entity "planned for" the disposal**, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell must have entered into the sale of [its product] **with the intention** that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).
>
> . . . Shell's **mere knowledge** that spills and leaks continued to occur is insufficient grounds for concluding that Shell 'arranged for' the disposal of [a hazardous substance] with the meaning of § 9607(a)(3).

*Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880 (Bold added).

Hoyt challenges the SAC's failure to allege its intentional disposal given the absence of allegations that "Hoyt required anything of Team or any other customer" or that "Hoyt installed, connected, inspected, or directed any activity related to any equipment" located at the property. Hoyt argues that the SAC's conclusory allegations "as to Hoyt's guidance" fail to allege facts of Hoyt's "intentional steps to dispose of a hazardous substance."

Plaintiffs respond that arranger liability "does not depend upon the arranger providing specific instructions as to how and where to dispose of hazardous waste" in that "a person can qualify as an arranger without ever providing any disposal instructions at all."

This Court agrees with Hoyt that the SAC's "guidance" allegations are insufficient to establish Hoyt's intentional disposal of hazardous substances. The SAC fails to allege that Hoyt controlled operation of the Hoyt Sniffer and in turn the disposal of hazardous substances. The SAC fails to substantiate with facts that Hoyt knew how a Hoyt Sniffer operator would dispose of "waste water" to rise to the level of intentional disposal of a hazardous substance. Intentional disposal is negated by the absence of allegations that Hoyt installed the Hoyt Sniffer, connected the Hoyt Sniffer to an open sewer or other disposal system, directed disposal from the Hoyt Sniffer, or inspected the Hoyt Sniffer and its

1  disposal.

2       In addition, plaintiffs confuse intentional disposal in that "knowledge alone is insufficient to

3  prove that an entity 'planned for' the disposal." *Burlington Northern*, __ U.S. __, 129 S.Ct. 1880.  This

4  is not a treatment case, like *Catellus Development Corp. v. U.S.*, 34 F.3d 748, 753-754 (9th Cir. 1994),

5  upon which plaintiffs rely, where a product composed of hazardous substances was sold.  The Hoyt

6  Sniffer, by itself, is not comprised of hazardous substances which require treatment or disposal.[5]  The

7  SAC's reliance on conclusory allegations is insufficient to demonstrate Hoyt's intentional disposal to

8  invoke arranger liability.

9               ***Useful Product Defense***

10       Hoyt characterizes the useful product defense as "an insurmountable barrier" to plaintiffs'

11  CERCLA claims.  Plaintiffs respond that "generation and disposal of hazardous waste was inherent and

12  inevitable in the use" of the Hoyt Sniffer to prevent application of the useful product defense.

13       "A person may be held liable as an 'arranger' under § 9607(a)(3) only if the material in question

14  constitutes 'waste' rather that a 'useful product.'" *Cal. Dept. of Toxic Substances v. Alco Pacific, Inc.*,

15  508 F.3d 930, 934 (9th Cir. 2007).  The useful product defense "applies when the sale is of a new

16  product, manufactured specifically for the purpose of sale, or of a product that remains useful for its

17  normal purpose in its existing state." *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 581

18  (N.D. Cal. 1993).

19       "The vendor of a useful product which through its normal course produces a hazardous

20  substance, such as a battery, is not an arranger under CERCLA." *Payless Cleaners*, 368 F.Supp.2d at

21  1077 (citing *Cadillac Fairview/Cal., Inc. v. United States*, 41 F.3d 562, 566 (9th Cir.1994)).  A

22  manufacturer of PCE cannot be held liable "as a CERCLA arranger where it has done nothing more than

23  sell a useful chemical." *Payless Cleaners*, 368 F.Supp.2d at 1077.  "[T]he manufacturer of dry cleaning

24  equipment who does nothing more than provide the machines and operating instructions is not an

25  'arranger' of waste disposal under CERCLA." *Adobe Lumber v. Hellman*, 415 F.Supp.2d 1070, 1081

26  _____

27     [5]   This Court agrees with Hoyt's analysis that plaintiffs rely on impertinent, distinguishable cases addressing
an alleged arranger which owned or possessed waste or participated in direct, on-site activities to contribute to contamination.
28  The SAC lacks allegations to support arranger liability based on such activities.

1    (E.D. Cal. 2006), *vacated on other grounds sub nom. Kotrous v. Goss-Jewett Co.*, 523 F.3d 924, 934

2    (9th Cir. 2008).

3           Hoyt argues that CERCLA liability cannot be imposed "by mere allegations that a manufacturer

4    of equipment provided equipment and operating instructions."  Hoyt continues that "design and

5    manufacture of dry cleaning equipment is incongruous with an arrangement to dispose of hazardous

6    substances."  Hoyt concludes that the SAC's mere allegations that "Hoyt designed and manufactured

7    equipment which was used by Team" are insufficient.

8           The useful product defense arises out of CERCLA's definition of "disposal" (Section 9601(29))[6]

9    in that merely identifying a "hazardous substance" is insufficient to establish that its placement in a

10   facility constitutes "disposal of any hazardous substance" under CERCLA.  *See 3550 Stevens Creek*

11   *Assocs. v. Barclays Bank of Calif.*, 915 F.2d 1355, 1360-1361 (9th Cir. 1990), *cert. denied*, 500 U.S. 917,

12   111 S.Ct. 2014 (1991).  For CERCLA purposes, "disposal" is construed "as referring only to an

13   affirmative act of discarding a substance as waste, and not to the productive use of the substance." *3550*

14   *Stevens Creek*, 915 F.2d at 1362.

15          In the CERCLA context, "hazardous substances are generally dealt with at the point when they

16   are about to, or have become, wastes." *3550 Stevens Creek*, 915 F.2d at 1362.  Congress did not intend

17   CERCLA to target legitimate manufacturers or sellers of useful products but rather desired "to hold

18   liable those who would attempt to dispose of hazardous wastes or substances under various deceptive

19   guises in order to escape liability for their disposal." *Dayton Independent School Dist. v. U.S. Mineral*

20   *Prods. Co.*, 906 F.2d 1059, 1065-1066 (5th Cir. 1990).

21          Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold

22   manufacturers liable as arrangers for selling a useful product containing or generating hazardous

23   substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808 (italics in original).

24   "Useful product" cases recognize that "liability cannot extend so far as to include *all* manufacturers of

25

26          [6]    CERCLA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the discharge,
     deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water

27   so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air
     or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

28

1    hazardous substances, on the theory that there will have to be disposal of the substance some time down

2    the line, *after* it is used as intended." *Burlington Northern*, 502 F.3d at 808 (italics in original).

3           Plaintiffs fail to substantiate their claim that when a "device" generates "hazardous waste which

4    must be disposed, the supplier of that device is liable as an arranger, regardless of whether it also serves

5    a useful purpose." Plaintiffs offer nothing meaningful to negate the useful product defense. The SAC

6    alleges that Team used the Hoyt Sniffer at the property but does not allege that Hoyt manufactured or

7    designed the Hoyt Sniffer. The SAC does not allege that the Hoyt Sniffer itself is a hazardous substance

8    and in turn, that its sale is an arrangement to dispose of hazardous substances. The transaction at issue

9    here is the sale of the Hoyt Sniffer, an event which neither produces nor involves hazardous substances

10   directly. The SAC fails to allege facts that the Hoyt Sniffer manufacture or sale constitutes "arrangement

11   for the ultimate disposal of a hazardous substance." *Payless*, 368 F.Supp.2d at 1077.

12          Even looking beyond the actual sale, the SAC offers nothing to suggest that "disposal of a

13   hazardous substance was arranged through the transaction." *Payless*, 368 F.Supp.2d at 1077. The

14   analysis of a fellow judge of this Court rings true here: "Peters [parties seeking to impose CERCLA

15   arranger liability] do not allege any facts to support a finding that a substantial part of Maytag's sale of

16   the dry cleaning machines involved the arrangement for the disposal of waste water. Rather, Maytag's

17   transaction can be described only as the sale of a useful good which, through its normal use, created a

18   waste byproduct. Under these facts alone, Maytag may not be held liable as a CERCLA arranger."

19   *Payless*, 368 F.Supp.2d at 1078. Plaintiffs fail to establish their notion that *Payless* conclusions conflict

20   with the authority cited in *Payless*. Plaintiffs' place dubious reliance on *Berg v. Popham*, 113 P.3d 604,

21   612 (2005), which addresses an impertinent Alaskan statute, and other non-binding, distinguishable

22   authorities decided prior to the U.S. Supreme Court's *Burlington Northern* decision.[7] The useful product

23   defense defeats plaintiffs' CERCLA arranger claims as to Hoyt.

24   / / /

25   / / /

26

27          [7]      This Court reiterates its agreement with Hoyt that plaintiffs rely on impertinent, distinguishable cases
     addressing an alleged arranger which owned or possessed waste or participated in direct, on-site activities to contribute to
28   contamination. The SAC lacks allegations to support arranger liability based on such activities.

*Ownership, Possession Or Control Of Hazardous Substances*

Hoyt challenges the SAC's absence of facts that Hoyt had "authority to control the disposal practices" at the property, "actually exercised control over the disposal practices," "had any duty regarding waste disposal," or "owned any of the PCE or associated waste products" at the property. Hoyt faults the SAC's mere allegation that Hoyt "controlled the disposal of PCE waste" in that a party which neither owns nor possesses a hazardous substance incurs CERCLA arranger liability only if it "had the authority to control the disposal of the hazardous substance or had the duty to dispose of the hazardous substance." Hoyt explains that "[m]erely alleging that Hoyt effectively controlled the discharge is not enough."

Plaintiffs respond that the SAC need not allege that Hoyt owned or possessed PCE in that arranger liability arises from "disposing of *someone else's waste* or controlling the disposal of *someone else's waste*." (Italics in original.) Plaintiffs argue that Hoyt is an arranger despite whether "it owned the waste which its machine created." Plaintiffs add that Hoyt's control of hazardous substance disposal is demonstrated by its design of the Hoyt Sniffer to produce waste water and its advise to and limited option for "customers to dispose of this waste down the sewer."

"No court has imposed arranger liability on a party who **never owned or possessed**, and **never had any authority to control or duty to dispose of**, the hazardous materials at issue." *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1451 (E.D. Cal. 1995) (bold added); *see United States v. Shell Oil Co.*, 294 F.3d 1045, 1058 (9th Cir. 2002) ("we can do no better than quote from Judge Levi's careful opinion in *United States v. Iron Mountain Mines, Inc.*"); *General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2nd Cir. 1992) ("it is the *obligation* to exercise control over hazardous waste disposal, and not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity an arranger under CERCLA's liability provision") (emphasis in original)).

Key components of arranger liability are "the authority or duty to control the disposal" of hazardous substances and actual disposal. *See Payless Cleaners*, 368 F.Supp.2d at 1078. "[W]hile 'control is a crucial element of the determination whether a party is an arranger,' that element requires the party to have had authority to control and to have exercised control over the disposal." *Payless*

*Cleaners*, 368 F.Supp.2d at 1078 (quoting *Shell Oil*, 294 F.3d at 1050)). "[A] party may be held liable on the basis of control only [when] it has the authority or duty to control the disposal, and when it or its agent, also exercise actual control." *Payless Cleaners*, 368 F.Supp.2d at 1079-1080. As to dry cleaning equipment, "design of machines to produce and discharge PCE waste water" and "equipment manuals requiring certain layout and drain arrangements . . . fall short of the requirements" to impose arranger liability. *Payless Cleaners*, 368 F.Supp.2d at 1080.

Hoyt correctly notes the absence of SAC facts that it had authority or a duty to control disposal and exercised control given that there are no allegations as to its location or physical installation of equipment and inspection of equipment or the property. The SAC lacks allegations of its "direct, site-specific activities" to demonstrate Hoyt's authority or duty to control disposal or actual disposal of waste. The SAC fails to substantiate that Hoyt, using plaintiffs' words, "dispos[ed] of *someone else's waste* or controll[ed] the disposal of *someone else's waste*." (Italics in original.)

To address the ownership, possession and control, plaintiffs rely on inapplicable Ninth Circuit cases addressing delivery of hazardous substances to a third party for disposal or treatment. *See Cadillac Fairview/California v. United States*, 41 F.3d 565 (9th Cir. 1994) (portion of styrene not converted to rubber returned to styrene manufacturer as hazardous substance for disposal); *Cattellus Development Corp.*, 34 F.3d 748 (9th Cir. 1994) (seller of lead-containing battery casings to lead reclamation plant subject to CERCLA liability). Plaintiffs quote a portion of *Catellus Development*, 34 F.3d at 752, that the Ninth Circuit considers, but does not require, "ownership or control to be evidence of arranging for disposal." However, plaintiffs omit a portion of the quotation focusing on "delivery": "It is sufficient that the substance had the characteristic of waste . . . at the point at which it was delivered to another party." *Catellus Development*, 34 F.3d at 752. Plaintiffs' reliance on *Jones-Hamilton v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 693 (9th Cir. 1992), is unavailing given that the Ninth Circuit addressed the non-analogous sale of raw materials containing hazardous substances which were spilled. Plaintiffs' inapplicable, non-binding authorities are also unpersuasive as is plaintiffs' attempt to equate the Hoyt Sniffer to a product comprised of hazardous substances. As noted above, the Hoyt Sniffer, by itself, is not comprised of hazardous substances. Hoyt correctly notes the non-application of cases cited by plaintiffs addressing ownership or possession or waste or direct, on-site activity not at issue here.

13

1    Hoyt is not subject to arranger liability in absence of allegations of its ownership, possession or

2    control of hazardous substances at disposal or otherwise.

3                              **CERCLA Declaratory Relief**

4    The SAC's (second) declaratory relief claim seeks declaratory judgment pursuant to section

5    9613(g)(2) "of the liability of defendants to plaintiffs for all Response Costs incurred or to be incurred

6    by plaintiffs in implementing the remedial action plan approved by this Court for responding to the

7    Releases of Hazardous Substances."

8    Section 9613(g)(2) empowers a court to "enter a declaratory judgment on liability for response

9    costs or damages that will be binding on any subsequent action or actions to recover further response

10   costs or damages."

11   In the absence of Hoyt's section 9607 liability, "Plaintiffs are categorically barred from the

12   requested declaratory relief."  *See Union Station Associates, LLC. v. Puget Sound Energy, Inc.*, 238

13   F.Supp.2d 1226, 1230 (W.D. Wash. 2002) ("Given that the Court granted partial summary judgment

14   disposing of Union's § 107 claim for cost recovery, and with this order dismisses Union's § 113(f) claim,

15   no substantive federal claims exist upon which to base Union's declaratory judgment claims. The

16   declaratory judgment causes of action are therefore dismissed.")

17   Potential section 9613 relief is tethered to a viable section 9607 claim.  In the absence of viable

18   CERCLA liability, Hoyt is not subject to CERCLA declaratory relief to warrant dismissal of the SAC's

19   (second) declaratory relief claim against Hoyt.

20                                    **RCRA Claim**

21   The SAC's (third) RCRA claim under 42 U.S.C. § 6972(a)(1) alleges that Hoyt and the other

22   defendants "have contributed to the past and present handling, storage, treatment, transportation or

23   disposal of hazardous waste ("PCE"), which may present an imminent and substantial endangerment to

24   health or the environment."

25   "RCRA is a comprehensive environmental statute that governs the treatment, storage, and

26   disposal of solid and hazardous waste."  *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct.

27   1251 (1996); *see Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331-332, 114 S.Ct. 1588,

28   1589-1590 (1994). Unlike CERCLA, "RCRA is not principally designed to effectuate the cleanup of

                                        14

toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Meghrig*, 516 U.S. at 483, 116 S.Ct. 1251; *cf. General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415, 1422 (8th Cir. 1990) (the "two ... main purposes of CERCLA" are "prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party"). RCRA's primary purpose, rather, is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, "so as to minimize the present and future threat to human health and the environment." *Meghrig*, 516 U.S. 479, 483, 116 S.Ct. 1251 (citing 42 U.S.C. § 6902(b)).

### *Contribution To Treatment And Disposal Of Hazardous Waste*

Plaintiffs invoke 42 U.S.C. § 6972(a)(1)(B) ("section 6972(a)(1)(B)"), which permits a civil action against "any person . . . including any past or present **generator** who has **contributed** or who is **contributing** to the past or present handling, storage, **treatment**, transportation, or **disposal** of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." (Bold added.)

Hoyt faults the SAC's bare allegation that it "contributed to the contamination of PCE at the site in question" based on Team's use of the Hoyt Sniffer and that Hoyt's manual provided general disposal guidance. Hoyt points to the lack of allegations that Team "possessed the manual, relied on the manual or made its waste disposal choices based on the manual." Hoyt continues that even if the SAC made such allegations, the RCRA claim would fail in the absence of Hoyt's contribution to waste disposal in that the SAC does not allege that "Hoyt handled or stored PCE or engaged in any on-site conduct."

Plaintiffs respond that Hoyt's supply of "specifications on how to use its device, and how to dispose of hazardous waste its device created . . . gives rise to an inference of control" to render Hoyt "liable as a contributor under RCRA."

The RCRA does not define "contribute." *Cox v. City of Dallas*, 256 F.3d 281, 294 (5th Cir. 2001). The "phrase 'contributed to' the contamination on-site suggests 'some level of causation between the contamination and a party to be held liable.'" *Interstate Non-Ferrous Corp.*, 298 F.Supp.2d at 979 (quoting *Hudson Riverkeeper Fund, Inc. v. Atlantic Richfield Co.*,138 F.Supp.2d 482, 487 (S.D.N.Y. 2001)). In *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008), the

Seventh Circuit Court of Appeals summarized necessary causation for an RCRA claim:

> A plain reading of the "has contributed or is contributing" language of § 6972(a)(1)(B) compels us to find that RCRA requires active involvement in handling or storing of materials for liability. The ordinary meaning of "contribute" is "to act as a determining factor." *Webster's II New College Dictionary* (2005). By definition, the phrase "has contributed or is contributing" requires affirmative action. The vast majority of courts that have considered this issue read RCRA to require affirmative action rather than merely passive conduct . . .

The Eighth Circuit Court of Appeals has also weighed in on interpretation of section 6972(a)(1)(B)'s "contributing to":

> Although the phrase "contributing to" is not defined by the statute, its plain meaning is "to have a share in any act or effect." Webster's Third New International Dictionary 496 (1961). "To have a share in" is arguably less involvement than might be required by the plain meaning of the phrase "to arrange": "to make plans, prepare," . . .

*U.S. v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1384 (8th Cir. 1989).

A fellow district court has explained that a "straightforward reading of RCRA compels a finding that only active human involvement with the waste is subject to liability" under section 6972(a)(1)(B). *Interfaith Community Organization v. Honeywell International, Inc.*, 263 F.Supp.2d 796, 844 (D. N.J. 2003). " Congress intended to impose liability only where a person is shown to have affirmatively acted as a determining factor over the waste management activities . . ." *Interfaith Community*, 263 F.Supp.2d at 844.

Hoyt characterizes its involvement, "at most," as passive in that the SAC alleges that Hoyt "manufactured a piece of equipment that was used by Team" and fails to allege that "Hoyt had any direct, active role in Team's waste disposal" or "active involvement . . . related to the handling and storage of PCE or PCE-containing waste water." Hoyt concludes that the "connection between the alleged sale of a piece of equipment by Hoyt and Team's subsequent waste disposal decisions over a course of 26 years is simply to attenuated to hold Hoyt liable under RCRA."

Plaintiffs argue that "Hoyt cannot escape liability under RCRA simply by claiming it did not itself dump the waste into the ground."

The problem for plaintiffs is the SAC's absence of allegations of "active involvement in handling or storing of materials." *Sycamore Indus. Park*, 546 F.3d at 854.  The SAC does not allege that Hoyt handled or stored PCE or engaged in similar affirmative action.  For RCRA purposes, the SAC reveals

16

Hoyt's passive conduct limited to manufacture of the Hoyt Sniffer which was operated by others.  Hoyt did not generate or dispose of a hazardous substance or engage in waste management activities. Plaintiffs' reliance on *Marathon Oil Co. v. Texas City Terminal Railway Co.*, 164 F.Supp.2d 914, 920-921 (S.D. Tex. 2001), is misplaced in that leaking railway tank cars at issue there are dissimilar to the Hoyt Sniffer, a device which is not used to transport hazardous substances.  Plaintiffs fail to explain the relevance of *U.S. v. Valentine*, 885 F.Supp. 1506, 1512 (D. Wyo. 1995), which addressed an oil field contractor's placement of skimmed oil into a storage tank at the disposal pit facility.  Moreover, manufacture and design of the Hoyt Sniffer is not analogous to the leaking underground storage tank at issue in *Agricultural Excess & Surplus Ins. Co. v. A.B.D. Tank & Pump Co.*, 878 F.Supp. 1091 (N.D. Ill. 1995), in that a storage tank constitutes active and affirmative involvement in storage or disposal of hazardous waste.  Plaintiffs' reliance on the unpublished *City of Stamps, Ark. v. Alcoa, Inc.*, 2006 U.S. Dist. LEXIS 27201 (W.D. Ark. 2006), is unavailing given that the case addressed transporters and issues irrelevant to those at hand.    Plaintiffs fail to establish that the SAC alleges that Hoyt contributed to treatment or disposal of hazardous substances.

Moreover, the Ninth Circuit has indicated that it would not hold manufacturers liable as RCRA contributors given that under its "expansive view of arranger liability" under CERCLA, the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of."  *Burlington Northern*, 502 F.3d at 808 (italics in original).  A fellow district court agrees with this point:

> Although the statutory requirements are somewhat different under each statute, the reasons justifying the court's holding that Monsanto did not arrange for disposal within the meaning of CERCLA also foreclose liability for disposal pursuant to RCRA. The sale of a useful product does not constitute the "handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste" required by RCRA. . . .The PCBs sold by Monsanto to its customers were transferred as a valuable commodity and the link between their sale by Monsanto and the ultimate discharge of contaminants, including PCBs, onto the Site is too attenuated to justify imposing liability upon the manufacturer.

*United States v. Union Corp.*, 277 F.Supp.2d 478, 491 (E.D. Pa. 2003).

### *Generator*

Plaintiffs characterize Hoyt as an RCRA generator, which is defined as "any person, by site, whose act or process produces hazardous waste . . ."  40 C.F.R. § 260.10.  Plaintiffs contend that the

1    RCRA applies to "persons who do no more than create solid waste" and to the Hoyt Sniffer, which

2    plaintiffs characterize as "an inherently wasteful product."

3          To support their generator contention, plaintiffs point to the following explanation from a fellow

4    district court:

5        Congress expressed its intent that RCRA apply to: (1) those who create solid waste, (2)
      those who transport or handle it during its life, and (3) those who provide a final resting
6      place for such waste.

7         Additionally, among those specifically included in the definition of "any persons"
      are "generators." *See* 42 U.S.C. § 6972(a)(1)(B) (1983 & Supp.1991). As a result, the
8      Court is further persuaded that RCRA applies to individuals who do no more than create
      solid waste. The Court simply will not accept defendants' interpretation of the statute
9      which would allow individuals to create solid waste, and avoid the requirements of
      RCRA by never making any attempt to clean up the mess. Clearly such a result is not
10     what was intended by a statute that desires to reduce "the amounts of solid waste that are
      generated."

11

12   *Zands v. Nelson*, 779 F.Supp. 1254, 1263-1264 (S.D. Cal. 1991); *see U.S. v. Northeastern*

13   *Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 741 (8th Cir. 1986) (RCRA's intention is "to

14   impose liability upon past non-negligent off-site generators and transporters of hazardous waste").

15         Plaintiffs pinpoint no SAC allegations to qualify Hoyt as an RCRA generator.  Plaintiffs appear

16   to claim that Hoyt is an RCRA generator because it failed to "clean up the mess."  Plaintiffs rest their

17   generator claim on the notion that the "SAC alleges that Hoyt created solid waste."  In fact, the SAC

18   makes no such allegation, and plaintiffs point to no SAC allegation to that effect.  Moreover, the SAC

19   suggests that Team operated the Hoyt Sniffer to the effect that if there is an RCRA generator, it is Team.

20   Plaintiffs ignore the need to allege that as generator, Hoyt "contributed to . . . the past or present

21   handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may

22   present an imminent and a substantial endangerment to health or the environment." *California Dept.*

23   *of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F.Supp.2d 930, 978 (E.D. Cal. 2003)

24   (quoting 42 U.S.C. § 6972(a)(1)(B)). Plaintiffs' reliance on *Zands,* 779 F.Supp. 1254, is unavailing given

25   that the SAC fails to allege that Hoyt "created" solid waste in that PCE creation is dependent on Hoyt

26   Sniffer use and operation by someone other than Hoyt.  The SAC fails to establish that Hoyt is subject

27   to RCRA liability as a generator.

28   / / /

**Nuisance**

The SAC's fourth claim alleges that Hoyt and the other defendants "have caused a nuisance to exist, by virtue of the contamination," including "the continuing discharge of PCE into groundwater."

Hoyt characterizes the nuisance claim as a "loose allegation [that] does not meet the pleading requirements because it fails to state facts related to any nuisance liability." *See Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627 (2005) ("it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind"). Hoyt faults the nuisance claim's mere allegation that Hoyt "caused a nuisance" without "fair notice of the facts related to any causal connection between Hoyt's alleged conduct and Plaintiffs' alleged injury."

Hoyt criticizes the SAC's absence of allegations that "Hoyt affirmatively instructed users to dispose of wastes improperly." Hoyt further faults premising its alleged nuisance on passive conduct related to its product manual given the lack of SAC allegations of reading or relying on the manual. Hoyt argues that "the passive language in the alleged guidance clearly puts the burden on Plaintiffs to assess whether the water needs further treatment and only to discharge it "**if no treatment is necessary**." (Bold in original.) Hoyt contends without pleading a sufficient nexus to its causation of a nuisance, Hoyt, as a product manufacturer, "could be liable for creating or assisting in creation of a nuisance at a particular site merely by making disposal instructions available to the public in general."

Hoyt points to *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal.App.4th 28, 13 Cal.Rptr.3d 865 (2004), where the California Court of Appeal addressed a California hazardous substances remediation and recovery statute. The California Court Appeal noted that in construing the statute "in light of the common law principles" on nuisance, "we conclude that those who took affirmative steps directed toward the improper discharge of solvent wastes – for instance, by manufacturing a system designed to dispose of wastes improperly or by instructing users of its products to dispose of wastes improperly – may be liable under that statute, but those who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal are not liable." *City of Modesto*, 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865. Hoyt notes that the SAC fails to allege "affirmative acts or instructions" for nuisance given the SAC's references to Hoyt's guidance that

19

1    wastewater "may need further treatment before discharge" and that "[i]f no treatment is necessary the

2    water coming from the separator is considered waste water . . ."

3         Plaintiffs offer nothing meaningful to challenge Hoyt's arguments that the SAC fails to allege

4    Hoyt's nuisance. Plaintiffs assert that the SAC alleges that "Hoyt affirmatively advised the dry cleaner

5    . . . to dispose of waste water containing PCE into an open sewer system." Plaintiffs identify no specific

6    portion of the SAC where the "affirmative" advice allegation appears. Plaintiffs point to a portion of

7    *City of Modesto*, 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865, where the California Court of Appeal

8    noted: "In harmony with *Selma*, we think a reasonable fact finder might conclude that defendants who

9    manufactured equipment designed to discharge waste in a manner that will create a nuisance, or who

10   specifically instructed a user to dispose of wastes in such a manner, could be found to have caused or

11   permitted a discharge." Plaintiffs fail to explain how such statement supports the nuisance claim. Hoyt

12   raises valid points and correctly highlights the need for "affirmative steps" to impose nuisance liability.

13   *City of Modesto*, 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865. Plaintiffs fail to substantiate a causal

14   connection between Hoyt's alleged misconduct and the nuisance to support the claim.

15                                              **Trespass**

16        The SAC's fifth claim alleges that Hoyt and the other defendants "have committed a continuing

17   trespass."

18        Hoyt faults the claim's lack of facts that Hoyt improperly disposed of wastes. Hoyt criticizes the

19   claim's mere allegations that Hoyt designed the Hoyt Sniffer that may have resulted in PCE waste water

20   and that Hoyt provided guidance that water "may need further treatment before discharge" and that water

21   should be piped to an open sewer "if no treatment is necessary." Hoyt notes the SAC's lack of

22   allegations that it operated the dry cleaners at the property.

23        Plaintiffs argue that the SAC alleges that "Hoyt affirmatively instructed and advised the dry

24   cleaning operator . . . to improperly dispose of waste generated by Hoyt's product, by dumping it into

25   the sewer" so that "Hoyt caused pollutants to enter onto the land, thereby committing a trespass."

26        "California's definition of trespass is considerably narrower than its definition of nuisance."

27   *Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 674, 15 Cal.Rptr.2d 796 (1993). "A trespass is an

28   invasion of the interest in the exclusive possession of land, as by entry upon it." *Wilson v. Interlake Steel*

*Co.,* 32 Cal.3d at 233, 185 Cal.Rptr. 280 (citation omitted).  "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another."  *Cassinos v. Union Oil Co.,* 14 Cal.App.4th 1770, 1778, 18 Cal.Rptr.2d 574 (1993) (citation omitted) (trespass where wastewater was injected from defendant's property to plaintiff's, interfering with plaintiff's mineral estate).  A trespass "may include wrongful entry or invasion by pollutants."  *Martin Marietta Corp. v. Insurance Co. of North America*, 40 Cal.App.4th 1113, 1132, 47 Cal.Rptr.2d 670 (1995).

Citing to California Judicial Council Civil Jury Instruction 2000 – Trespass, Hoyt holds plaintiffs to establish that Hoyt "intentionally, recklessly, or negligently caused" PCE to enter the property.  Hoyt argues that the trespass claim is doomed by its absence of allegations that Team reviewed or relied on Hoyt's instructions, that Hoyt owned or possessed PCE hazardous material, or that Hoyt took "affirmative steps directed toward the improper discharge of solvent wastes."  As such, Hoyt concludes that the SAC fails to allege sufficiently that "Hoyt caused PCE to enter the[] property."

The problem for plaintiffs is that they rest on platitudes.  Again, plaintiffs identify no specific portion of the SAC where "affirmative" advice allegations appear.  Plaintiffs fail to illustrate "improper" disposal of wastes and rely merely on potential piping of waste water into "an open sewer system" by persons other than Hoyt.  Hoyt's alleged conduct fails to substantiate invasion in exclusive possession of land to support a trespass claim.

**Comparative Equitable Indemnity**

The SAC's eighth claim alleges that plaintiffs are entitled to "comparative equitable indemnity" from Hoyt and the other defendants "for such damages and costs plaintiffs have paid or will pay in excess of his share."

Hoyt seeks dismissal of the state law indemnity claim in absence of "predicate liability" given that equitable indemnity is a "derivative" claim and "entirely dependent" on other claims' "viability."  Plaintiffs appear to concede as much as their opposition papers offer nothing to support the comparative equitable indemnity claim.

California Civil Code section 1432 addresses contribution among joint obligors and provides that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."  Under California

21

1   Code of Civil Procedure section 875(c), "contribution may be enforced only after one tortfeasor has, by

2   payment, discharged the joint judgment or has paid more than his pro rata share thereof."

3          "California law permits a concurrent tortfeasor to obtain equitable indemnity *only* from another

4   concurrent tortfeasor." *General Motors Corp. v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993) (italics in

5   original). "[T]here can be no indemnity without liability . . . [U]nless the prospective indemnitor and

6   indemnitee are jointly and severally liable to the plaintiff there is no basis of indemnity." *Munoz v.*

7   *Davis*, 141 Cal.App.3d 420, 425, 190 Cal.Rptr. 400, 403 (1983). "[A] right to indemnify exists only if

8   the injured party has a *legal cause of action* against both the indemnitor and the indemnitee." *Doupnik*,

9   1 F.3d at 866 (italics in original; names added). The indemnity "doctrine presupposes that 'each of two

10  persons is made responsible by law to an injured party.'" *New Hampshire Ins. Co. v. Sauer*, 83

11  Cal.App.3d 454, 459, 147 Cal.Rptr. 879, 882 (1978) (citations omitted).

12         Plaintiffs appear to concede that their "remaining claims" are "derivative" of Hoyt's liability

13  under CERCLA and RCRA and for trespass and nuisance. In the absence of the predicate liability, the

14  comparative equitable indemnity claim fails, especially given failure to qualify Hoyt as a concurrent

15  tortfeasor.

16                          **HSAA Response Costs And Declaratory Relief**

17         The SAC's ninth claim seeks to recover response costs under HSAA and alleges that Hoyt and

18  the other defendants are "'covered persons' within the meaning of CERCLA, and therefore 'responsible

19  parties' under HSAA and liable to plaintiff for Response Costs and other damages." The SAC's tenth

20  claim seeks pursuant to HSAA (Cal. Health & Saf. Code, § 25363), declaratory relief that defendants

21  are liable for HSAA response costs.

22         Hoyt is not subject to HSAA liability in the absence of derivative CERCLA liability in that  a

23  "[r]esponsible party'" or "liable person" for HSAA purposes means "those persons described" in

24  CERCLA section 9607(a). Cal. Heath & Saf. Code, § 25323.5(a)(1). Again, the absence of a valid

25  CERCLA claim dooms plaintiffs' HSAA claims.

26                                      **Declaratory Relief**

27         The SAC's eleventh claim seeks "a judicial determination pursuant to California Code of Civil

28  Procedure § 1060 of plaintiffs' right to reimbursement and indemnification by defendants for all costs

                                                   22

1   and attorneys' fees heretofore or hereafter incurred by plaintiffs as a result of defendants' conduct."

2        Hoyt seeks dismissal of the state law declaratory relief because the "CERCLA, RCRA, and other

3   claims also fail."

4        The SAC's reference to a California civil procedure statute is curious given this is a federal

5   action and subject to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, providing in

6   pertinent part:

7        In a case of actual controversy within its jurisdiction . . . any court of the United
     States, upon the filing of an appropriate pleading, may declare the rights and other legal
8        relations of any interested party seeking such declaration, whether or not further relief
     is or could be sought.  Any such declaration shall have the force and effect of a final
9        judgment or decree and shall be reviewable as such.

10  28 U.S.C. §2201(a).

11       The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

12  300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

13  *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

14  "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

15  (2nd Cir. 1997).  A DJA action requires a district court to "inquire whether there is a case of actual

16  controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir.

17  1994).

18       As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

19  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

20  the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

21  273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

22       A justiciable controversy is thus distinguished from a difference or dispute of a
     hypothetical or abstract character; from one that is academic or moot. . . . The
23       controversy must be definite and concrete, touching the legal relations of parties having
     adverse legal interests. . . . It must be a real and substantial controversy admitting of
24       specific relief through a decree of a conclusive character, as distinguished from an
     opinion advising what the law would be upon a hypothetical state of facts.
25

26  *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

27       Once again, the declaratory relief claim falls with the demise of the CERCLA, RCRA and other

28  claims and the absence of a cognizable justiciable controversy.

**Attorney Fees**

The SAC's twelfth claim seeks recovery of attorney fees under California Code of Civil Procedure section 1021.5 and alleges that plaintiffs' recovery of response costs under CERCLA "confers a benefit on the public by ensuring that those who benefitted from and who are at fault for the Release of Hazardous Substances and Hazardous Wastes into the Environment bear the full costs of such Release."

California Code of Civil Procedure section 1021.5 authorizes an "award of attorneys' fees to a successful party" in an action "which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Hoyt argues that in the absence of a viable claim against it, plaintiffs are not successful parties entitled to seek attorney fees under the statute. Hoyt is correct. The attorney fees claim fails.

**CONCLUSION AND ORDER**

For the reasons discussed below, this Court:

1.      DISMISSES this action with prejudice against Hoyt; and

2.      DIRECTS the clerk to enter judgment in favor of defendant Hoyt Corporation and against plaintiffs Hinds Investments, L.P. and Patricia MacLaughlin in that there is no just reason to delay to enter such judgment given plaintiffs' claims against Hoyt and Hoyt's alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

**Dated:   April 21, 2010**              /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE